34 P.(2d) 299

## In re MIERA'S GUARDIANSHIP.

### No. 3887.

Supreme Court of New Mexico.

March 5, 1934.

On Rehearing July 16, 1934.

William F. Cheek and Alfred B. Helm, both of Albuquerque, for appellant.

J. O. Seth, of Santa Fé, for appellee.

WATSON, Chief Justice.

This is an appeal by Frank T. Hines, administrator of Veterans' Affairs, and First Savings Bank & Trust Company of Albuquerque, guardian, from an order of the district court, on appeal from the probate court, approving the final account of Francisquita V. Lopez, predecessor of said trust company,

as guardian of the estate of Juanita T. Miera, an insane person, and discharging said former guardian and her sureties from liability.

Appellants here urge that there was error in the order, since the final account on its face shows illegal acts of the guardian, shows a shortage in an unascertained sum, and shows negligence in failure to collect principal and interest of loans illegally made.

Appellees contend that the record before us presents no question for review.

The transcript is made up for the most part of the proceedings in the probate court. Additional to those, we have only the findings and conclusions of the district judge, the order appealed from, and the application for, and allowance of, the appeal.

There being no bill of exceptions, there can be no question of fact before us. The findings are conclusive.

There are no specific exceptions to the judgment. However, formal exceptions are not required, and we may and should here review any question of law on which a ruling was fairly invoked below. N. M. App. Proc. Rule XII, § 1.

The objections to the final account, in the main and as here urged, go to certain loans made to J. V. Quintana, Bailon Lopez, and Margarito Lopez, aggregating $5,000, and secured by mortgages. They are charged to have been made "contrary to law," to be past due, and, as to the Quintana loans, to be in default as to interest, and the guardian is said not to have shown by her final account or otherwise that she has taken all necessary steps to collect. Therefore, it is claimed, there is a possible loss in an unascertained amount standing in the way of a discharge of appellees.

Interpreting the findings in the light of the objections, it appears that there was no prior court order authorizing these loans, which were made in 1926, but that the Veterans' Bureau knew of the fact at once, seeing to it that the mortgages were properly recorded; that the guardian thereafter submitted annual accountings to the probate court disclosing these loans and their condition, all made upon the form provided by the Veterans' Bureau, all approved by the probate court, on the request and recommendation of the Veterans' Bureau, whereby it "waives all objections and exceptions to the report of Mrs. Francisquita V. Lopez' accounting herein and recommends to the court the approval of the same"; that the estate consists entirely of government benefactions to the ward, as a soldier's widow; that the guardian is the mother of the ward, is elderly and illiterate, and has at all times in administering the trust acted under the direction and instructions of the bureau's regional office and officials, as they have well known; that she has acted in good faith in making the loans; and that there is nothing to show what, if any, loss will result, the present guardian (which had qualified thirteen months before this hearing) having failed to take any steps to foreclose the questioned mortgages.

On these findings the learned trial judge concluded that the subsequent repeated approval of the loans was equivalent to their

original authorization; and that the Veterans' Bureau could not be heard now to object to their validity, after its repeated approvals and waivers.

We cannot doubt that these rulings were fairly invoked by the very nature of the case, and by what may be termed the pleadings, being the final account itself and the objections thereto. By the final account Mrs. Lopez demanded to be absolved by turning over to her successor certain past-due mortgages, as to two of which interest was in arrears. The objection of the Veterans' Bureau, the donor of the trust, was that the mortgages, being unauthorized, were made at the guardian's risk, and that she could not be absolved until possible liability should be determined. The case is not substantially distinguishable from King v. Doherty, 32 N. M. 431, 258 P. 569.

We have then before us the single question of law just stated.

The matter is somewhat complicated by a remarkable disregard of controlling statutes in this proceeding. The whole guardianship has been carried on under authority of and in the probate court. The present guardian, successor to Mrs. Lopez, and appellant here, claims authority only from that court. It seems, however, that the jurisdiction of the probate courts extends only to guardianship of minors and idiots. Comp. St. 1929, c. 62. This ward was thirty-one years of age when she became insane and was committed to the state asylum. The district courts have long possessed the jurisdiction in the case of adjudged lunatics and habitual drunkards "to make such orders touching * * * the management and safe keeping of the estate * * * as it shall think necessary and proper." Comp. St. 1929, § 85-110, Repealed by Laws 1933, c. 76.

Appellees seem to concede the proposition of appellants that a guardian, after obtaining the ward's money by virtue of an appointment, cannot question the validity of the appointment or the jurisdiction of the appointing court. But they do contend that Comp. St. 1929, § 62-119, on which appellants in part rely in claiming that the loans were unlawfully made, is not applicable. We think the contention must be sustained.

The further contention that "there is clearly no statute requiring the guardian to obtain the approval of the *probate court* to her investments" is literally correct. We think, however, that Comp. St. 1929, § 85-121, repealed by Laws 1933, c. 76, must be deemed controlling of the guardian's liability. Though that section contemplates a guardianship authorized in the district court, the mistake of applying to the wrong court cannot change the fact that it is a lunatic's estate that is here involved. We think that the guardian must account according to the liability imposed by statute upon the guardians or committees of lunatics.

Section 85-121 provides: "It shall be lawful for the committee aforesaid, under the direction of the court, to invest the money of said lunatic or habitual drunkard in such manner as shall be approved by the court, and if the investment be bona fide made the committee shall not be liable for any loss that

may arise thereby." (Repealed by Laws 1933, c. 76.)

■ Under this statute can appellants maintain their contention that an investment is necessarily unlawful and at the guardian's risk absolute, merely because made without previous court authority?

Clearly she is not liable for loss if she made the investments in good faith, as the court finds she did, and "under direction of the court" and "in such manner as shall be approved by the court."

It is the theory of the decision below that the several approvals of annual reports bring the guardian, as to these investments, within the protection of this statute. Appellants, contending contra, point to the differences between periodical and final reports or accounts, as well stated in 12 R. C. L. "Guardian and Ward," § 46; and cite this text and a number of decisions to the proposition that approval of an annual report is not conclusive against the ward, though approval of a final report is.

Assuming this to be sound, it does not go far enough. The text cited states: "They (approved annual reports) are prima facie evidence of the state of the account, but are subject to re-examination in settling later accounts."

Another text says: "But annual or partial accounts are at least prima facie evidence of their correctness, if made in conformity with the statutory requirements, by a regularly appointed guardian, and, although their correctness may be rebutted, the burden is on the party attacking the settlement to show error therein." 28 C. J. "Guardian and Ward," § 411.

If such be the applicable rule, appellants cannot successfully maintain that they have made a case by objecting merely to the lack of specific previous authorization. The burden was on them to overcome the prima facie evidence that these investments were legitimate, to show that, having been approved, they were made in bad faith, and possibly also to show a resulting loss to the estate. They are concluded here by the findings that the investments were approved and made in good faith.

In cases like this we think there is good reason for applying this rule, even if it be not the better generally. Where the estate is the accumulation of "financial benefits from the U. S. Veterans' Bureau," it cannot be said that these periodical accountings are "intended (merely) to inform the judge and also interested parties of the status and general conduct of the guardianship"; that they are "usually accepted and filed ex parte and without a hearing," or that "the ward, who is the party in adverse interest, is legally and usually actually incapable of protecting his own interests, and the one whom the law charges with the duty of asserting and protecting his rights, is in this matter the adverse party." Since 1927 at least, the Veterans' Bureau has had the status of an interested party. Its manifest duty is to protect the rights of the ward and scrutinize the acts of the guardian. It may "protest" any account, and no account can be approved

until after notice to it and an opportunity to protest. Comp. St. 1929, § 85-124, repealed by Laws 1933, c. 76.

The larger reasons for the original distinction being thus removed, it might be urged that the approval should be as conclusive in the case of the periodical or occasional accounting as in the case of the final report. We need not and do not now so hold. It is sufficient to hold, as we do, that such approval is at least prima facie evidence of a correct accounting.

So concluding, we are spared the necessity of considering the further question whether the Veterans' Bureau was or could be estopped, as the learned trial judge considered it to have been.

Finding no error in the order appealed from, it will be affirmed, and the cause remanded. It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.

On Rehearing.

WATSON, Chief Justice.

■ By the motion for rehearing our attention was directed to Comp. St. 1929, § 34-412, a statute not theretofore mentioned by either counsel. It is there written that: "Probate courts shall have exclusive original jurisdiction in * * * the appointment and removal of guardians of * * * persons of unsound mind."

This provision on its face appears inconsistent with our holding that the jurisdiction actually resided in the district court. Accordingly, a rehearing was granted.

The section mentioned is traceable to the Kearney Code, "Courts and Judicial Powers," section 21, C. L. 1897, p. 71. There also are found certain related provisions under the title "Guardians." C. L. 1897, pp. 80, 81. One or two of those still survive. Comp. St. 1929, §§ 62-131, 62-132.

Jurisdiction was given to the district courts in the matter of lunatics by L. 1855–56, c. 38, which, without much change, appears now as Comp. St. 1929, §§ 85-101 to 85-129. The repeal in 1933 is immaterial here. Of course, the jurisdiction of the probate court was no longer exclusive after the enactment of that statute.

We not only overlooked the statute mentioned, but we failed to note that Comp. St. 1929, c. 62, in its original form, applied to insane persons as well as to minors and idiots. L. 1859–60, p. 52, § 26. The section will be found in this form in all revisions and compilations until the revision of 1915, when the words "insane persons" were dropped. Code 1915, § 2577. In view of that fact we must hold that it was a matter of concurrent jurisdiction, at least from 1859–60 to 1915.

Perhaps the reason for dropping these words was to give to the district court, which alone could make an adjudication of lunacy, exclusive jurisdiction to deal with the estates of lunatics. Unfortunately, if such was the

purpose, the Legislature fell short of making it perfectly manifest by failing to change that statute which conferred the jurisdiction on probate courts in express and certain language.

In view of the inconclusiveness of the legislative action and of the very general exercise of the jurisdiction which has persisted, we have reached the conclusion that we erred in saying that "the jurisdiction of the probate courts extends only to the guardianship of minors and idiots."

This is simply by way of correction. It does not affect the result in this case. The striking of the words "insane persons" in the revision of 1915 is not deemed to have been wholly ineffective. From that time, chapter 62 became inapplicable to insane persons or lunatics, and has since been, as we originally said, applicable only to minors and idiots. The jurisdiction of the probate court rests, not upon the fact that it once had jurisdiction under chapter 62, but that at all times the jurisdiction has existed by virtue of the clear and express language of section 34-412. Having the jurisdiction, and chapter 62 being inapplicable, the probate courts, when they exercise the jurisdiction, as well as the district courts, must look to the law of "lunatics and drunkards" (Comp. St. 1929, c. 85), not to the law of "guardian and ward" (Id. chapter 62), for the procedure and incidents of the jurisdiction.

We were therefore right in holding that the guardian's accountability is governed by Comp. St. 1929, § 85-121, not by Id. § 62-119.

And so we adhere to our original disposition of the cause.

SADLER, HUDSPETH, and BICKLEY, JJ., concur.

ZINN, J., did not participate.