O. H. MOBERLY, COMMISSIONER OF FINANCE OF THE STATE OF MISSOURI IN CHARGE OF THE AFFAIRS OF PARMA BANK OF PARMA, MISSOURI, PLAINTIFF, v. CHARLES POWELL AND W. W. WALKER, ADMINISTRATOR OF THE ESTATE OF GUSTAV SCHOELLER, DECEASED, DEFENDANTS.

CHARLES POWELL, RESPONDENT, v. W. W. WALKER, ADMINISTRATOR, APPELLANT.—86 S. W. (2d) 383.

Springfield Court of Appeals.   October 7, 1935.

*Wammack & Cooper* for appellant.

*Sharp & Baynes* for respondent.

SMITH, J.—This is an action of interplea filed in the Circuit Court of Stoddard County, by O. H. Moberly in charge of the closed bank of Parma, wherein he alleges that he has in his possession $500 in Fourth Liberty United States Bonds, belonging to Gustav Schoeller, deceased, and that defendant, C. D. Powell, claims to own said bonds by reason of a bill of sale executed by Gustav Schoeller in his lifetime and on the 5th day of September, 1932, and that W. W. Walker, administrator of the estate of said Gustav Schoeller, deceased, claims title to said bonds as the administrator of the estate of the said Gustav Schoeller, deceased.

Thereafter, and at the December term, 1933, of the Circuit Court of Stoddard County, defendant, C. D. Powell, filed his application and affidavit for a change of venue in said cause, which was granted, and the said cause was transferred to the Circuit Court of Dunklin County for trial.

Defendant, Powell, duly filed his answer in said cause claiming the ownership of said bonds by reason of the bill of sale executed by the said Gustav Schoeller on the 5th day of September, 1932.

Defendant, Walker, appeared and filed his answer claiming the right to said bonds by reason of the fact that the said Gustav Schoeller was on the 20th day of June, 1932, found to be a person of unsound mind and incapable of managing his affairs by the Probate Court of Stoddard County, and the said W. W. Walker was by said court appointed guardian and curator of said Gustav Schoeller, and that after the death of the said Gustav Schoeller, which occurred on the 19th day of May, 1933, the said W. W. Walker was duly appointed the administrator of the estate of the said Gustav Schoeller by the Probate Court of Stoddard County.

On the 23rd day of February, 1934, the said cause was tried in the Circuit Court of Dunklin County, and that court on the 14th

day of March, 1934, rendered its judgment and decision therein in favor of defendant, W. W. Walker.

On the 14th day of March, 1934, the defendant, W. W. Walker, filed his motion for new trial in said cause, which was by the court overruled, and on the same day, the said W. W. Walker filed his affidavit for an appeal herein, which was granted to this court.

The testimony showed that on the 15th day of June, 1932, the Prosecuting Attorney of Stoddard County filed his statement in the probate court, charging Gustav Schoeller to be of unsound mind; that citation was issued and the trial had on the 20th day of June before a jury which rendered a verdict finding that Gustav Schoeller was a person of unsound mind, from which judgment on the same day Schoeller filed his application for an appeal to the Circuit Court of Stoddard County which was granted. The order of the court required an appeal bond in the sum of five hundred ($500) dollars to be secured by a deposit of the bonds now in question with W. W. Walker, who had been by the court, appointed guardian. The papers were by the probate court duly transmitted to the Circuit Court of Stoddard County, where they were duly filed and thereafter an application for change of venue was filed by Schoeller which being sustained, the cause was transmitted to the Circuit Court of Pemiscot County. The case was never heard in Pemiscot county and on May 19, 1933, approximately a year after the case first reached the circuit court, Schoeller died and Walker who had been previously appointed guardian was by the same court, appointed administrator of his estate. In July, 1934, according to appellant's statement, W. W. Walker as administrator filed a motion in the Circuit Court of Pemiscot County to dismiss the appeal for the alleged reason that no bond had been given in the case and upon hearing of this motion to dismiss it was by that court sustained. On the part of the defendant, the evidence showed that Powell, respondent, had been living on the farm belonging to Schoeller for approximately eleven (11) years; that for several years he had paid rent but on June 11, 1932, Schoeller had made him a deed to the farm. The testimony also showed that Powell and his wife had been taking care of Schoeller, who was crippled with rheumatism and that they did this up until his death; that Schoeller did not live in the same house with Powell but in a small house to himself in the orchard where he said he wanted to live and die. With particular reference to the bonds in question the testimony was that on the 5th day of September, 1932, Schoeller executed a bill of sale of the particular liberty bonds now in question, to Powell. The bonds themselves being at that time deposited for safe keeping in the Parma bank. Justice of the Peace Leavett, who was

called in to draw up the bill of sale said that it was in his handwriting that Mr. Schoeller signed it and. he, the Justice acknowledged it; that after the execution it was delivered to Powell by Schoeller.

Upon this statement of facts the court found that the bonds were the property of respondent, Powell and ordered them delivered to him, from which judgment, Walker has brought the case to this court.

The case is presented by appellant Walker to us under two points, which we quote as follows:

"First: Did the appeal of Gustav Schoeller from the judgment of the probate court have the effect of superseding or suspending that judgment until a trial could be had anew in the Circuit Court of Stoddard County? We take the position that it did not because there was no bond given to support the affidavit for appeal."

"Second: Was there any consideration for the bill of sale for the $500 in bonds? We do not think there was for the identical consideration is mentioned in the bill of sale that is mentioned in the deed conveying the eighty acres of land to Mr. and Mrs. Powell."

W. W. Walker contends here that since the testimony shows that Mr. Schoeller had been declared an incompetent person before he executed the bill of sale transferring the bonds to Powell, the bill of sale was a nullity and void. Powell contends that when the appeal was taken to the circuit court from the probate court wherein Schoeller was declared to be incompetent, the appeal had the effect of superseding or suspending the judgment in the probate court until a trial could be had in the circuit court, and that since Schoeller died before the trial was had in the circuit court there really was never any judgment declaring Schoeller insane or incompetent. Walker counters to this and insists that since Schoeller failed to give an appeal bond that such failure is fatal to the proceedings, and that the case stands as if no appeal had been taken.

We have been cited no Missouri case exactly on all fours with this case, nor have we found any. It necessarily follows that we are largely trading on new territory in reaching our conclusions. We have some statutory provisions with reference to proceedings of the probate court in inquiring into the mental condition of any one properly brought before that court. Also we have statutory provisions with reference to appeals from such hearings to the circuit court, with provisions of the statutes as to hearings thereon in the circuit court. Keeping these statutory provisions in mind, with holdings from our courts upon these statutes, and with holdings of other courts upon similar statutes, we shall undertake to reach a reasonable conclusion herein.

There is no question but that an appeal lies from the finding of the probate court adjudging a person insane. [Section 285, Revised Statutes 1929, Mo. Stat. Ann. 1929, sec. 285, p. 181; In re Tannory (Mo. App.), 2 S. W. (2d) 189; Baker v. Smith's Estate (Mo. App.), 18 S. W. (2d) 147.]

It is also true that when an appeal is taken to the circuit court the probate court loses jurisdiction of the matter until determined in the circuit court and the filing of an affidavit for appeal and the transmission of the papers to the circuit court vests the circuit court with jurisdiction of the proceedings. [Sections 291 and 292, Revised Statutes 1929, sections 291 and 292, Mo. Stat. Ann. 1929, p. 184; Lewellyn v. Lewellyn, 87 Mo. App. 9; Lormis v. Hartman (Mo. App.), 193 S. W. 36.]

It is expressly provided that when the circuit court receives the papers and transcript from the probate court, the circuit court "shall proceed to hear, try and determine the same anew, without regarding any error, defect or other imperfection in the proceedings of the probate court." [Section 292, Revised Statutes 1929.]

The facts are undisputed that in this case after a hearing was had in the probate court an affidavit for an appeal to the circuit court was filed and acted upon by the probate court. In keeping with the statutes the probate court sent a transcript and the original papers to the circuit court, and these papers were on file in the circuit court until after the death of the person whose insanity was sought to be established. It is true the appellant in that case did not make the bond required of him on appeal, but it is also true that the appeal was granted by the probate court, and the case was lodged in the circuit court. This inquiry as to insanity was had in the probate court of Stoddard county on June 20, 1932, and on that date Gustav Schoeller filed his affidavit for an appeal, which was on that date granted to the Circuit Court of Stoddard County. In December, 1932, Schoeller appeared in the circuit court and filed an application and affidavit for a change of venue, and the case was sent to the Circuit Court of Pemiscot County. On May 19, 1933, Gustav Schoeller died. Thereafter W. W. Walker was by the probate court of Stoddard county appointed administrator of Schoeller's estate, and on July 17, 1934, as administrator W. W. Walker appeared in the Circuit Court of Pemiscot County and obtained a dismissal of the appeal taken by Gustav Schoeller, for the reason that no appeal bond had ever been given in the case, and contends here that because no appeal bond had been given by Schoeller, that that left the judgment of the probate court of Stoddard county in full force and effect as of the date of the hearing in the probate court of Stoddard county, and that since that hearing and finding of the probate court was prior to the execu-

tion of the bill of sale involved in this suit, that said bill of sale was void and of no effect, and that there really was no sale of the government bonds to Charles Powell, the respondent in this suit. This bill of sale was dated and acknowledged on September 5, 1932. This bill of sale was executed two and one-half months after the hearing in the probate court, and eight months before the death of Gustav Schoeller, and nearly two years before the appeal was dismissed in the Circuit Court of Pemiscot County.

We cannot agree with the contention that the dismissal of the appeal under the circumstances in this case put into full force and effect the judgment of the probate court of Stoddard county dated June 20, 1932. This for several reasons, which we shall undertake to discuss.

In the first place insanity proceedings are governed entirely by statutes in this State. Our Supreme Court in the case of Ruckert v. Moore has recently said,

"An insanity proceeding is *in invitum*, and seeks to deprive the citizen of his liberty or property or both. Such proceeding seeks to take away from the citizen not only his right to the possession of his own property, but also his right to contract freely with respect to his property, and to dispose of and do with it as he will. Therefore, it is said that, 'where a statute prescribes a certain method of procedure to determine whether persons are insane, such inquiries must be conducted in the mode prescribed, and the statute regulating such proceedings must be followed strictly.' [14 R. C. L. 556, 557.] 'Proceedings for an adjudication of insanity against an individual are required to be in strict compliance with the statutory requirements.' [32 C. J. 634.]

"The statute of this State relating to insanity proceedings (section 444, Revised Statutes 1919) provides: 'If information in writing, verified by the informant on his best information and belief, be given to the probate court that any person in its county is an idiot, lunatic or person of unsound mind, and incapable of managing his affairs, and praying that an inquiry thereinto be had, the court, if satisfied there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury: Provided, that if neither the party giving the information in writing, nor the party whose sanity is being inquired into call for or demand a jury, then the facts may be inquired into by the court sitting as a jury.'

"Section 446, Revised Statutes 1919, provides: 'In proceedings under this article, the alleged insane person must be notified of the proceeding by written notice stating the nature of the proceeding, time and place when such proceedings will be heard by the court, and that such person is entitled to be present at said hearing and

to be assisted by counsel, such notice to be signed by the judge or clerk of the court under the seal of such court, and served in person on the alleged insane person a reasonable time before the date set for such hearing.' '' [Ruckert v. Moore, 317 Mo. 228, 237, 295 S. W. 794.]

The sections 444 and 446, mentioned in the above quotation are the same as sections 448 and 450 of Revised Statutes 1929. In 1921 our Legislature passed an act which removed any doubt as to the right of an appeal in cases of this kind. This is now section 285 of our statutes, Mo. Stat. Ann. 1929, sec. 285, p. 181.

The right of appeal given to Gustav Schoeller was as much a statutory provision as any other provision of the statute. He unquestionably had a right to appeal and that gave him a right to have the question of his mental condition tried *de novo* in the circuit court. The probate court recognized this right and sent the transcript and the files to the circuit court. What was it sent for? What was the affidavit for? Why was the appeal granted? It was because the statute provided for it, and it had the effect at least, of holding in abeyance the finding of the jury in the probate court, and the appointment of a guardian by that court, until the matter had been tried *de novo* in the circuit court.

It is true the bond was not given as ordered by the probate court, but that court granted the appeal and sent the files to the circuit court, and the case was lodged in the circuit court just as if the bond had been given, and it is our conclusion that the entire matter was then beyond the jurisdiction of the probate court, and that because of the granting of the appeal as provided by the statute. It is not enough to say that no valid or legal appeal was taken because the bond was not given. Our statute makes provision for just such cases. [Section 290, Revised Statutes 1929, Mo. Stat. Ann., p. 184.] But that section provides that the action, if there are any defects in the affidavit for appeal or no bond given, must be taken in the circuit court, and not in the probate court. It is our conclusion that upon the filing of the affidavit for appeal by Gustav Schoeller and upon the granting of the appeal as was done in this case, the probate court had no further jurisdiction of the insanity inquiry and the appointment of a guardian so long as that proceeding was pending in the circuit court.

In the second place, we must not forget that the proceedings of inquiry of insanity in this case were not started by Gustav Schoeller, but were started by another and against him. The record shows that from the date of his appeal June 20, 1932 up to July 17, 1934, after he was dead, not a thing was done or said in the circuit court about his failure to give a sufficient appeal bond. W. W. Walker must have had notice of his intention to make application for a change

of venue from the Circuit Court of Stoddard County, and must have had knowledge of the court's action in granting the change, and yet the record is absolutely void of any action being taken by any one to have the bond supplied, and the record fails to show any steps taken in the Circuit Court of Pemiscot County to have the bond supplied or to have the case dismissed until after the death of Schoeller, and not until after the trial of this case in Dunklin county.

It appears to us that since the parties who were interested in having Schoeller adjudged insane took no steps in the circuit court to have the defect corrected until after the death of Schoeller that such action came too late. Our Supreme Court in the case of Egger v. Egger, 225 Mo. 116, 123 S. W. 928, a case where one of the same statutes as here was involved, and where no steps were taken in time to have an affidavit for appeal supplied, very pointedly said:

"Besides if the defendants had thought that there was anything wrong with the affidavit they had the right to move the circuit court to dismiss the appeal for want of a proper affidavit, and that court would have sustained the motion if it had considered the affidavit insufficient and if the plaintiff had not, as she would have then had the right to do, filed a sufficient affidavit. Section 283 in such case provides: 'no appeal shall be dismissed in the appellate court for failure to file affidavit or bond, or because of a defective affidavit or bond, provided the appellant shall file the affidavit and bond to the satisfaction of the court in which the appeal may be pending.' Since the defendants failed to call the attention of the circuit court to the defect, if there was a defect, when it could have been corrected or obviated, it is too late to make objection now."

It is true that in the Egger case the attempt was made to have the Supreme Court hold against the person under inquiry because of a defective affidavit for appeal, and that court held it could not be done there, because the matter had not been called to the attention of the circuit court, where the defect could have been corrected or obviated.

The record in this case fails to show that any attention was paid to the matter until after the death of Gustav Schoeller, and we think it was too late then, in view of what we shall hereinafter say.

Third: We think, and hold, that the cause of action pending against Gustav Schoeller abated at the time of his death on May 19, 1933, more than a year before the filing of the motion to dismiss the appeal, and the cause abated while the proceeding was being held in abeyance by his appeal. Our Supreme Court in State v. Holtcamp, 51 S. W. (2d) at page 19, has said: "A lunacy proceeding is a civil, as distinguished from a criminal, proceeding; yet it is a proceeding *in personam* by the *state*; the public is interested in the welfare of the person alleged to be insane." Our courts have many times held that

an inquiry as to the sanity of a person is an action *in personam*. Since insanity inquiries are proceeding *in personam*, and since such proceedings in this State are governed by statutory provisions, which must be strictly followed, and since our statutes provide for a trial *de novo* on appeal, we can reach no other conclusion but that when Gustav Schoeller pursued the right given him to appeal, and did appeal from the action in the probate court, that he by that very act, under our statutes, put in abeyance the proceedings in his case, and when he died before the matter was determined, his death had the effect of terminating the action against him. He died without the question of his insanity having ever been determined.

He died under the presumption of sanity, and his act in executing the bill of sale for the government bonds in this case, so far as the court proceedings as to his insanity were concerned, was that of a sane person.

There was quite a lot of oral evidence in this case as to whether or not Schoeller was sane or insane at the time of executing the bill of sale. The appellant here does not insist that the evidence was preponderant that Schoeller was insane. In fact this appeal is based solely upon the two assignments which we have quoted above, and we are limiting our consideration only to those assignments, and are forced to and do hold against the appellant under the first assignment.

The second assignment challenges the consideration for the bill of sale.

The proof in this case, not denied or contradicted by any testimony, was that Mr. Leavett, a justice of the peace, wrote the bill of sale at the request of Gustav Schoeller, who signed it in his presence, and acknowledged it before the justice of the peace. After completing the acknowledgment it was handed back to Schoeller, who at that time delivered the paper to Mr. Powell. The testimony does not show fraud on the part of Powell in inducing Schoeller to sign and deliver the bill of sale. The testimony does show performance on the part of Powell in caring for Schoeller in his last days, and in burying him in accordance to the terms of the bill of sale. This bill of sale was executed and delivered and we think placed the title to the bonds in C. D. Powell, the grantee therein.

It is our conclusion that under the record before us and the evidence adduced that no reversible error was made by the trial court, and that the judgment should be affirmed. It is so ordered. *Allen, P. J.*, and *Bailey, J.*, concur.