73 P.2d 532

**In re CUELLAR'S ESTATE.**

**No. 4284.**

Supreme Court of New Mexico.

Nov. 8, 1937.

Wm. J. Eaton, of Socorro, for appellant.

Botts & Botts, of Albuquerque, for appellee.

HUDSPETH, Chief Justice.

Appellant was appointed guardian of the estate of Domingo Cuellar, incompetent, by the probate court of Socorro county, and ordered to give bond in the sum of $20,000. He filed a surety company bond on which he paid premiums in the sum of $164.74. After the appointment .of appellant by the probate court, Frank T. Hines, Administrator of Veterans' Affairs, filed a motion to vacate the appointment, and upon the denial of the motion by the probate court he filed a petition under N.M. 1929 Comp.St. §§ 34-422 and 34-423, for the removal of the administration of the estate, which had been pending in the probate court for several years, to the district court, and for a trial de novo of the "issues in this cause." The order of removal was entered as prayed on the 20th day of July, 1933, without notice to appellant. Five days later appellant moved to vacate the order of removal and to remand the proceedings to the probate court. On October 3d an order overruling appellant's motion was entered. An appeal was taken by appellant, and this court affirmed the lower court's judgment. In re Cuellar's Estate, 38 N.M. 518, 36 P.(2d) 526. In denying· the motion of appellant to remand, the court entered a stay order restraining appellant from acting as guardian "until certain de novo hearings can be had, or until further order of the court." The appointment of appellant as guardian was not vacated until after the decision of this court on appellant's appeal and the remand of the cause (In re Cuellar's Estate, supra), when Frank T. Hines, Administrator of Veterans' Affairs, took the position for the first time that the probate court was without jurisdiction to appoint a guardian for the reason that Domingo

Cuellar had not been adjudged incompetent. He also filed on the 14th day of February, 1935, with a petition for the appointment of appellee guardian of the estate of Domingo Cuellar, an exemplified order of the probate court of Pulaski county, Ark., adjudging said Domingo Cuellar incompetent, which reads as follows:

"Now on this day there is presented to the Court a charge of insanity executed by Chas. O. Burkett setting forth that Domingo Cuellar has been a patient in Veterans' Administration Facility, North Little Rock, Arkansas, from December 6, 1924, and that the aforesaid Domingo Cuellar is afflicted with a mental disorder and this Court is petitioned to institute inquiry into his sanity in the manner provided by law.

"There is also presented to the Court a certificate executed by Cleveland Cabler as Chief Attorney for the Veterans' Administration certifying that the aforesaid Domingo Cuellar is a veteran of the World War, that he is afflicted with a mental disorder which renders him incompetent, and further that the appointment of a guardian is a condition precedent to the payment of any funds by the aforesaid Veterans' Administration, and further that it is necessary for this Court to adjudge the aforesaid Domingo Cuellar incompetent in order that a legal guardianship may be established in the State of New Mexico.

"There is also presented to the Court an affidavit executed by Doctor E. K. Allis and Doctor W. A. Jolley, practicing physicians of the State of Arkansas and members of the Medical Staff of Veterans' Administration Facility, North Little Rock, Arkansas, certifying that the aforesaid Domingo Cuellar has had a continuous residence in said institution since December 6, 1924, and that said physicians have given him an examination and have diagnosed his mental condition as Dementia Praecox, Hebephrenic type, and further express the opinion that said Domingo Cuellar is mentally incompetent and incapable of caring for himself or his affairs.

"After hearing the testimony and having been fully advised pertaining to the law and evidence, and after examining the aforesaid Domingo Cuellar, the Court finds that he is afflicted with a major mental disorder, that he is a citizen of Pulaski County, Arkansas, and further that the facts are not doubtful and that trial by jury is unnecessary. The Court is of the opinion that the said Domingo Cuellar should be adjudged incompetent.

"It is therefore ordered and adjudged by the Court that the aforesaid Domingo Cuellar should be and he is hereby adjudged mentally incompetent, and he is committed to the Veterans' Administration Facility, North Little Rock, Arkansas, pursuant to the provisions of Act No. 36 of the 1929 General Assembly of Arkansas."

After the appointment of appellee guardian appellant filed in the district court a claim for the premium paid on the guardian's bond and for several hundred dol-

lars additional expenditures, attorneys' fees, and compensation as guardian. The court allowed $18.34 of the money paid for bond premium and certain other items, in all $103.34, and disallowed the attorneys' fees and expenditures incurred in the appeal resulting in the decision of this court in Re Cuellar's Estate, supra. Both parties appealed. Appellee maintains that appellant has never been appointed guardian of the estate of Domingo Cuellar, in that the purported appointment by the probate court was superseded by the appeal to the district court, and also that the probate court had no power to make the order appointing appellee as guardian because Domingo Cuellar had not at that time been lawfully adjudged insane or incompetent; hence it was error to allow any part of appellant's claim. It is not questioned that prior to the enactment of Laws 1933, c. 76, probate courts had jurisdiction of the guardianship of incompetents and their estates. In re Miera's Guardianship, 38 N.M. 377, 34 P.(2d) 299.

The removal statute, N.M.1929 Comp.St. § 34-422, authorizes removal to the district court of the administration of estates without notice or hearing, and section 34-423 provides: "and thereupon such administration shall be docketed as other causes in the district court and said court shall proceed with the administration of said estate and upon the request of any interested person shall try de novo any issue upon which the probate court may have rendered a decision within ninety days prior to the filing of said petition in the district court."

Prior to the enactment of this statute N.M.1929 Comp.St. § 34-412, provided for appeals from the probate court to the district court and a hearing de novo, but it apparently was not the intention of the Legislature that by the mere taking of an appeal the judgment of the probate court would be vacated and set aside. In First Nat. Bank v. Dunbar, 32 N.M. 419, 258 P. 817, 818, we said: "A trial de novo could have been had in the district court, and the correctness of the judgment * * * could have been there reviewed."

If the effect contended for by appellee be given an ex parte order of removal to the district court of the administration of estates, in many cases it would leave the property of the estate without a conservator, and seriously complicate the responsibility of bondsmen of guardians and administrators. The bondsmen should be held even though the will under which the executor purports to act is fabricated. Miera v. Akers, 25 N.M. 508, 184 P. 817. There is no question of the jurisdiction of the district court to remove a guardian upon notice. Of course the court would appoint some one to receive the property of the estate. Appellee cites McMahan v. Trautvetter, 305 Ill. 395, 137 N.E. 230; Moberly v. Powell, 229 Mo.App. 857, 86 S.W.(2d) 383; Wright v. Boswell's Guardian, 103 S.W. 314, 31 Ky.Law Rep. 700, in support of his contention that the general order of the court for trial de novo

superseded the appointment of appellant as guardian by the probate court. In the last case cited, Wright v. Boswell's Guardian, the court said that the meaning of trial de novo depended upon the wording of the statute. The Kentucky statute (Civ. Code Prac.Ky. § 726) provides for trials "anew, as if no such judgment had been rendered." Our removal statute is somewhat unusual in its provisions. No notice is required and, while it authorizes trial de novo of any issue upon which the probate court may have rendered a decision within 90 days upon the request of any interested person, we hold that that request must be specific and that a mere general order for a trial de novo on all issues is not sufficient to cancel or supersede the appointment of a guardian.

The next point relied upon by appellee is that the court was without jurisdiction because Domingo Cuellar had not been at that time lawfully adjudged insane or incompetent, and appellant cites Damron v. Rankin (Tex.Civ.App.) 34 S.W.(2d) 360; Pan-American Life Ins. Co. v. Crymes, 169 Miss. 701, 153 So. 803, 806; and other cases. In the Crymes Case, Mr. Justice Griffith, in a specially concurring opinion, states the reason for the rule as follows:

"Since the decision of this court in Baum v. Greenwald, 95 Miss. 765, 49 So. 836, it has been the general understanding that it is not within the allowance of the law to appoint a guardian of the property of an adult person upon the ground of insanity except and until that adult person has been adjudged insane under a writ de lunatico inquirendo by a jury of six freeholders. This requirement of the law rests upon a fundamental guaranty and is established, moreover, to prevent oppression and the seizure of property by the designs of greed or hatred or other such motives. And being fundamental, the result is that until so adjudged by a jury, a citizen of this state remains in the eyes of the law as if sane so far as guardianship for insanity is concerned. In Ames v. Williams, 72 Miss. 760, 772, 774, 17 So. 762, this state was definitely aligned with those authorities which hold that the appointment of an administrator upon the estate of a living person is void, for there an indispensable or fundamental element of jurisdiction is absent. Upon like principle the appointment of a guardian for a person on the allegation that he is a minor when in fact he was then an adult, would be void, for there was no minor before the court, an indispensable element of jurisdiction was absent. Likewise the appointment of a guardian for an adult person upon the allegation that he was a lunatic would be void, if in fact the person had not been so adjudged by a jury, for until so adjudged he is not a lunatic in the law so far as concerns a guardianship of his property on that ground.

"The majority has rested its decision, however, on the concluding clause of section 1896, Code 1930, which provides that the chancery court may appoint a guardian of the estate "of a citizen of this state of

unsound mind who may be confined out of this state in an asylum for the insane," and has in effect said that it is immaterial how he happened to be so confined, and that while as a citizen of this state he has thrown about him the inviolable guaranties herein above mentioned, he loses the right immediately upon his crossing the state line whether he go voluntarily or is carried against his will or is enticed to go. It was a privilege, valued above all others, of the Roman citizen—and one remarked upon throughout all times since that day—that wherever he went he was still a Roman citizen; and a citizen of this state, wherever he may be, should still be invested, so far as the laws of this state are concerned, with all the rights and immunities of a citizen of this. state. It seems to me, therefore, that unless the confinement in another state has been upon an inquiry and adjudication substantially the equivalent of a proceeding under a writ de lunatico inquirendo in this state, such a confinement should not be considered sufficient so far as property in this state is concerned. Otherwise it would allow guardianship and the seizure of the property here of some citizen who for some mental trouble, actual or asserted, has sought treatment in another state, or who has been taken or enticed there and confined on false allegations of persons designing through that means to seize the property. The arguments of convenience that a guardian is necessary to an absent and confined patient, are more than displaced by the consideration of the possibilities of what by oppression, enticement, the designs of greed, or of the passions of family disruptions and disputes, and the like, could be brought about by resort to this statute as the majority has construed it."

This certainly should be the rule whether there is a statutory declaration on the subject or not in ordinary cases, but the question here is whether this rule has application where one entered the army of the United States, became insane while in the service, has since been cared for in the asylums of the government as a ward, and his only estate consists of the war risk insurance and pension paid to him by a generous government.

It was early held by our territorial courts that to constitute duress an imprisonment must be tortious, and without lawful authority, or by an abuse of lawful authority. McDonald v. Carlton, 1 N.M. 172. This was a habeas corpus proceeding brought by an enlisted soldier in the United States Army. Domingo Cuellar occupied a similar position in so far as unlawful restraint is concerned. If there had been occasion for a judicial ascertainment of his state of mind by a court, the proceeding in the probate court of Pulaski county, Ark., would have been farcical. There was no service upon Cuellar nor upon his guardian, relative, or friend. He was not represented by counsel; no witnesses appeared before the court. The decision was made upon affidavits of government physicians who no doubt stated

the facts, but facts upon which the government had been acting for a matter of fifteen years, both in the care of the veteran and in the disbursement of funds. Under the statute upon which the Arkansas court acted such an investigation was not necessary if the soldier was a citizen of Arkansas. Section 6 of the act (Act No. 36, p. 62, Acts Ark.1929) provides: "Where a petition is filed for the appointment of a guardian of a mentally incompetent ward a certificate of the director or his representative, setting forth the fact that such person has been rated incompetent by the Bureau on examination in accordance with the laws and regulations governing such Bureau; and that the appointment of a guardian is a condition precedent to the payment of any moneys due such person by the Bureau, shall be prima facie evidence of the necessity for such appointment."

The Supreme Court of Appeals of Virginia, in United States Veterans' Bureau v. Thomas, 156 Va. 902, 159 S.E. 159, 161, stated: "The federal government has adopted our state courts as the means whereby the compensation of incompetent veterans of the World War may be administered and used for their benefit. The Veterans' Bureau, constituted and created for the purpose of paying the compensation to a committee of an incompetent, is further directed, by the act creating it and defining its powers and duties, to co-operate with the state courts in the matter of appointing committees for insane veterans."

There was no statute of this state at the time of the appointment of appellant requiring the adjudication of incompetency before the appointment of a guardian of the estate, of an insane soldier in the custody of the government. See chapter 60, Laws 1935, amending chapter 76, Laws 1933, providing for the adjudication and custody of incompetent persons; also trial court rules 85—101 et seq., including rule 85—105, as amended.

There appears in the record a letter from the Bureau of War Risk Insurance, bearing the date of February 21, 1921, addressed to a brother of Domingo Cuellar, as follows:

"This is to advise you that your brother, the above named discharged soldier, has been rated as permanent and total from March 15, 1919. Therefore he is entitled to payments of insurance in the sum of $57.50 a month from that date, and accordingly an award of insurance in the sum of $57.50 a month effective March 15, 1919 was approved in your favor as guardian of the above ex-soldier on Feb. 18, 1921.

"You are further advised that inasmuch as the rating is permanent and total his award of compensation has been amended so that he will receive $100.00 a month from the date of his discharge instead of $80.00 a month heretofore.

"A check for the accrued amount due to him under the above award will be forwarded to you as guardian as soon as possible. * * *"

It appears that the entire estate of Domingo Cuellar, amounting to some $14,000, consists of the proceeds of these government payments. From the date of his discharge from the Army, having been previously found to be totally incompetent as of March 15, 1919, he was cared for by the government and moved from place to place without regard to state boundaries. The finding by the probate court of Pulaski county, Ark., that Cuellar was a citizen of that state, if binding upon New Mexico courts, should result in the sending of the estate of Cuellar, all of which is movable property, to the state of Arkansas for administration. Chapter 60, Laws 1935, and trial court rule 85—105 as amended.

The funds of Cuellar, who, it is admitted, was a resident and citizen of Socorro county, N. M., at the time he entered the Army, had been in the custody of the court for many years. We are constrained to hold that the probate court had authority to appoint the appellant guardian without an adjudication of incompetency. His estate consisted solely of the funds paid to him by the government, and he was in the care and under the control of the federal government and had been since his enlistment in the Army. There was no reason whatsoever to surmise that any one in the service of the United States is interested in unlawfully confining Domingo Cuellar in an asylum. They are not interested in his estate. It is not from the officers of the government, medical or otherwise, that duress, undue restraint, or other abuses of this unfortunate man might be expected, and there is no reason for the application in this case of the salutary rule which first requires an adjudication of incompetency· before the appointment of a guardian of an adult's estate. We therefore hold that there is no merit in appellee's assignments of error; that the district court did not err in allowing appellant the small items of expense and compensation, aggregating $103.34. We further hold that the court erred in disallowing a part of the premium on the guardian's bond paid by appellant. As to the other items claimed by appellant, consisting of the expenses of the litigation instituted by him in an effort to prevent the appointment of his successor, we are constrained to hold that he made improper opposition to the petition for the appointment of a new guardian, and that he will have to bear the costs of that litigation. It follows that the court did not err in disallowing those items. In re Wiseman, 18 Wkly.Rep. 574.

For the reasons stated, the judgment of the district court in denying a part of the premium paid by the appellant on his guardian's bond should be reversed and the cause remanded to the district court, with directions to enter judgment in favor of appellant for the sum of $146.40, the difference between the sum allowed for premium on the guardian's bond and the

amount paid by appellant, and for his costs. It is so ordered.

SADLER and BRICE, JJ., concur.

BICKLEY and ZINN, JJ., did not participate.