IN THE MATTER OF THE ESTATE OF DAN E. McARTHUR, DECEASED, GEORGE R. McARTHUR, DISTRIBUTEE, APPELLANT, v. JOHN A. Mc-ARTHUR, EXECUTOR, RESPONDENT.—207 S. W. 2d 546.

Kansas City Court of Appeals. Opinion delivered January 12, 1948.

*Roy D. Williams* and *W. W. Carpenter, Jr.,* for appellant.

*Schaumburg & Martin, L. O. Schaumburg* for respondent, John A. McArthur, as an individual.

*Ragland, Otto, Potter & Embry,* and *Leon P. Embry* for respondent, John A. McArthur, Executor.

438

CAVE, P. J.—This matter arose in the probate court of Cooper County. To get a clear understanding of the issues presented on appeal,·we make a general statement of the facts and proceedings in the probate and circuit courts of that county.

Dan E. McArthur died, leaving a will disposing of certain real estate and after some special bequests, devising the residue of his estate to his son, George R. McArthur. The testator appointed his brother, John A. McArthur, as executor without bond. John A. McArthur qualified and letters were granted September 12, 1944. During the administration of the estate Mr. Harry Wooldridge was attorney for the executor. A semi-annual settlement was made in May, 1945. Prior to the November term, 1945, a notice of final settlement was published, but this notice was not signed by the executor and not published by his direction. The probate judge, as was his custom, had the notice published.

Sometime prior to November 27, 1945, Mr. Wooldridge prepared a settlement, which he captioned as a *final* settlement, for the executor

to sign and file. On November 27 Mr. Wooldridge appeared in the probate court with this prepared settlement and, at the same time, John A. McArthur appeared with his personal attorney, Mr. Schaumburg, and George R. McArthur, the distributee of the residuary estate, appeared with Mr. Williams, his attorney. Mr. Schaumburg's instructions from John A. McArthur were, among other things, not to allow the settlement prepared by Mr. Wooldridge to be filed as a *final* settlement. Mr. Schaumburg presented a written statement to the effect that the executor had discovered that certain of his personal assets had been commingled and inventoried as assets of the estate, and that it was impossible to make final settlement and distribution until there had been a determination which assets were his personally and which belonged to the estate. Mr. Schaumburg requested that he be permitted to type the written statement on the form of settlement which Mr. Wooldridge had prepared, and which was, at that time, unsigned by the executor. Mr. Wooldridge and Mr. Williams objected and the probate judge sustained the objection. Thereupon, but before the settlement was signed and sworn to by the executor, and before it was filed, Mr. Schaumburg typed the written statement onto the prepared settlement Also prior to the signing, verification and filing of the settlement, the word *final,* appearing in the caption, was changed to *annual.* Thereupon, the executor signed and verified the settlement, filed it, and the probate judge labeled the settlement on the back as an *annual* settlement.

Thereafter, on December 4, 1945, the probate court made an order "expunging" from the settlement the recitation typed thereon by Mr. Schaumburg, and declared the settlement to be a *final* settlement and ordered distribution of the estate. Whereupon John A. McArthur, as executor and individually, filed exceptions to the said order of the probate court, which exceptions were overruled, and John A. McArthur, as executor and as an individual, filed affidavit for appeal, gave bond in the sum of $500, and the probate court entered an order granting an appeal to the circuit court.

Thereafter, a trial was had and the circuit court entered judgment vacating the order entered by the probate court on December 4 and the order overruling said exceptions, and ordered the probate court to treat said settlement as an *annual* settlement, and to proceed therewith accordingly. Distributee, George R. McArthur, perfected his appeal to the Supreme Court, and that court ordered the cause transferred to this court for lack of jurisdiction. Such other facts as are pertinent will be discussed in disposing of the assigned errors.

Appellant's first assignment is that the affidavit for appeal filed in the probate court was insufficient to confer jurisdiction on the circuit court. The affidavit recites that the appeal is taken "from the order and judgment of the probate court of Cooper County, Missouri, dated December 4, 1945, . . . and from the order and judgment of said

probate court dated January 10, 1946, whereby said court overruled the exceptions to said order and judgment of said court, dated December 4, 1945. . . ." Included in the affidavit are recitations of the findings which the probate·court made in its judgment of December 4. We doubt the necessity of the affidavit reciting the various facts found in the judgment, because there was but *one judgment* appealed from. The appeal was not taken from "many orders or many judgments" made at different times and, for this reason, the case of Keet and Rountree Dry Goods Co. v. Williams, 202 S. W. 620, 622, is not controlling. But aside from this, appellant's allegation of error goes no further than to charge lack of jurisdiction in the circuit court. The record discloses that the probate court filed the affidavit and the appeal bond and approved the latter, and made an order granting the appeal. When this is done, the appeal is complete. Sec. 289, R. S. 1939, provides: ". . . but no appeal shall be dismissed in the appellate court for failure to file affidavit or bond, or because of a defective affidavit or bond, provided the appellant shall file the affidavit and a bond to the satisfaction of the court in which the appeal may be pending." The appellant did not attack the sufficiency of the affidavit or the bond in the circuit court. The statutory prohibition against the dismissal of an appeal from the probate court to the circuit court for failure to file an affidavit or bond for appeal, or because of a defective affidavit or bond, upon the filing of a satisfactory affidavit or bond, was enacted in 1891. Prior thereto, it had been held that an order granting an appeal from the probate to the circuit court was ineffective and conferred no jurisdiction on the circuit court in the absence of an affidavit or appeal bond. Green v. Castello, 35 Mo. App. 127, 133. Whereas, thereafter the due allowance of the appeal was held to vest jurisdiction in the circuit court even though the affidavit or bond be defective. Amos v. Wetzel, (Mo.) 133 S. W. (2d) 361, 362; Lormis v. Hartmann, 193 S. W. 36. In Egger v. Egger, 225 Mo. 116, 134, 123 S. W. 928, the court had under consideration an affidavit for appeal from the probate to the circuit court. The court considered the affidavit sufficient; but also said: "Since the defendants failed to call the attention of the circuit court to the defect, if there was a defect, when it could have been corrected or obviated, it is too late to make objection now." In the Amos case, supra, the court said (362):

"It thus appears the noted change in the statute establishes that the filing of a proper affidavit for appeal in the probate court is not a prerequisite to the jurisdiction of the circuit court and, when considered in connection with the provision for trial anew in the circuit court and the quoted holding in the Eggers case, such affidavit does not constitute a part of the record proper in the circuit court and any error in its ruling thereon is a matter for exception and preservation in a motion for new trial."

Appellant's second complaint is that the appeal bond given was insufficient to confer jurisdiction on the circuit court. No attack on the sufficiency of the bond was made in the circuit court, and what we have said supra is applicable to the sufficiency of the bond and disposes of this contention. In addition to the statute and cases cited supra, see Moberly v. Powell, 229 Mo. App. 857, 865, 86 S. W. (2d) 383, 387; Nidy v. Rice, 44 S. W. (2d) 196. The authorities cited and relied on by appellant are not in point. In City of Caruthersville v. Barnett, 149 Mo. App. 162, there was a motion filed in the circuit court to dismiss the appeal because no sufficient appeal bond had been filed. In Nidy v. Rice, supra, there was also filed in the circuit court a motion to dismiss the appeal, and this court held that since bond for one hundred dollars had been *filed* and *approved* by the probate court, that this was sufficient. In State ex rel. Knisley v. Jones, 202 S. W. 1117, the probate court had required the appellant to give bond, *which appellant refused to do,* and, under the peculiar facts in that case, it was held that the circuit court acquired no jurisdiction. It is our conclusion that under the facts in the instant case the circuit court acquired jurisdiction of the cause.

Appellant's next assignment is to the effect that the circuit court erred in holding that the settlement filed on November 27 was an *annual* and not a *final* settlement.

It is conceded the executor did not sign the notice of final settlement, although he had discussed the matter with his then attorney, Mr. Wooldridge, and had expressed a desire to close the estate as soon as it could be done. The probate judge had the notice of final settlement published, as was his custom. Mr. Wooldridge, in anticipation of final settlement being made, prepared such a settlement, but the executor refused to sign and verify it, as prepared by Mr. Wooldridge, and insisted that it be changed from a *final* to an *annual* settlement; and that there be attached to it and become a part of it, the written claim or statement that he, as an individual, had a just demand against the estate because of the commingling of some of his personal assets with the property of the estate. After these changes had been made, he then signed and verified it as an *annual* settlement and filed it in the probate court. The question is, did the circuit court err in the judgment it rendered?

There are certain essential prerequisites to the making of a final settlement, which are: Publication of the notice provided for in Sec. 229, full administration of the estate, and payment of all debts. Sec. 230; State ex rel. Lefholz v. McCracken, 231 Mo. App. 870, 95 S. W. (2d) 1239, 1243; State ex rel. Aufderheide v. Stolte, 1 S. W. (2d) 209, 213. Sec. 229 requires every executor and administrator to "make final settlement" after having published a proper notice. Sec. 230 provides, "If it appear to the court that such notice was duly published, and that the estate of the deceased has been fully adminis-

442

tered and all debts paid, *the court shall make final settlement,* and shall find and determine who are the persons entitled to distribution and their respective interests in said estate, . . .". (Italics supplied). While this section does state that "the court shall make final settlement"; Sec. 229 provides that the executor "shall make final settlement." Statutes in *pari materia* must be read and construed together in order to keep all provisions of the law on the same subject in harmony so as to work out and accomplish the central idea and intent of the lawmaking branch of our state government. Thus, construing these two sections together, they mean that the *executor* shall *make* or *prepare* and *file* his *final settlement* and that the court, all other statutory conditions having been complied with, shall *approve* the settlement. This construction is supported by other sections of the administration code which authorize the probate court, if an executor fails or refuses to make or file a settlement, to issue citation and, if necessary, revoke his letters. See Secs. 216-219.

The evidence is sufficient to justify the trial court in finding that the executor did not sign, authorize or adopt the notice of publication of final settlement. It also clearly shows that the executor did not intend to make and file this settlement as a *final* settlement. Before he would sign it he insisted that it be designated as an *annual* settlement, and that the statement concerning the potential claim against the estate because of the alleged commingling of his personal assets with assets of the estate, be attached to the settlement. In addition to that, the record discloses that there were unpaid county and state taxes due from the estate, and that there was an open question whether the estate owed a federal income tax. It is true his attorney, Mr. Wooldridge, had prepared an income tax return showing no taxes due, but the executor had refused to sign the same, and other attorneys consulted at the time concerning that question, had advised him that the return was not proper in all respects, and Mr. Wooldridge, in his testimony, concedes that such may have been true. The record does not disclose what the errors were, but it does disclose that there was a dispute or controversy about the correctness of the return at the time this settlement was filed. Before the probate court can approve a final settlement and make an order of distribution, it must appear to the court "that the estate of the deceased has been fully administered and all debts paid, . . .". Sec. 230.

Under the facts disclosed in this record, the trial court was justified in holding that the estate had not been *fully administered* and *all debts paid,* and that the probate court improperly approved the settlement as a *final* settlement and ordered distribution.

Appellant argues that if the executor did not desire to make *final* settlement, then he should not have filed any settlement. He could have done that and the probate court could then have proceeded against him by citation, as provided in Secs. 216-219. But the mere

fact that he did file a settlement under the conditions and circumstances disclosed by the record, would not authorize the probate court to declare it a *final* settlement and order distribution.

The judgment of the circuit court is affirmed.

All concur.