310 So.2d 361 (1975)
Sherry C. GOLDSTEIN, Appellant,
v.
Robert S. GOLDSTEIN, Appellee.
No. 74-674.
District Court of Appeal of Florida, Third District.
March 18, 1975.
Rehearing Denied April 16, 1975.
*362 Miller & Podell, Miami Beach, for appellant.
Podhurst, Orseck & Parks, Marx & Squitero, Miami, for appellee.
Before HENDRY and HAVERFIELD, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
PER CURIAM.
The appellant Sherry C. Goldstein, the petitioner in an action for dissolution of marriage, appeals from the final judgment, seeking reversal of certain of its provisions.
The parties were married in 1959. A child of the marriage, a daughter, was born in 1966. The parties separated in August of 1971. In November of that year the wife filed a petition for dissolution of marriage, which was granted by the judgment entered on January 22, 1974. The wife was awarded custody of the child. The husband was ordered to pay $75.00 per week for child support, and to pay rehabilitative alimony of $100.00 per week for a period of two years. In addition, the wife was awarded $4,500.00 lump sum alimony, and was held to own a one-half interest (amounting to $11,763.00) in certain listed assets. As stated in the judgment, that interest of the wife with the lump sum alimony would "result in the wife receiving cash or securities worth approximately $16,263.00". The other assets of the husband, as listed in the judgment, including securities valued at approximately $50,000.00 in a stock brokerage account, were held to be the property of the husband. He was required to maintain a $20,000.00 insurance policy on his life for the benefit of the child, and to furnish major medical plan insurance for her.
The wife's appeal centers on four contentions of error, first that the awards of alimony and for child support were inadequate; second that it was an abuse of discretion to limit the payment of alimony to two years; third that the court erred by failing to find the wife was entitled to a one-half interest in a jointly owned savings certificate of $13,200.00 (which the husband took over two months after the commencement of the action); and fourth that the holding of the court which denied to the wife a one-half interest in the securities held in the brokerage account was contrary *363 to the evidence and was not in accordance with the applicable law.
On consideration of the record and briefs we hold (1) that no abuse of discretion has been shown as to the amounts of the payments required to be made by the husband for alimony and child support; (2) that in the circumstances of this case it was inappropriate and therefore error to make the award of periodic alimony rehabilitative in nature, and limited to two years; (3) that the ruling of the court with reference to the above-mentioned savings certificate has not been shown to be erroneous; and (4) we find merit in the wife's contention that it was error to deny her a one-half interest in the assets or equity of the parties in the above-mentioned stock brokerage account.
The determination of amounts to be paid for alimony and child support are largely within the judicial discretion of the trial court, and the party complaining thereof has the burden to demonstrate an abuse of discretion in that regard. We hold no such abuse of discretion has been shown.
The record did not furnish basis to make the periodic alimony rehabilitative in nature. The accompanying lump sum alimony award was not in such amount as to justify a provision for the periodic installment alimony to terminate in two years. It was not made to appear that the wife had training, skills or ability to enable her to be self supporting, and there was no reasonable basis to conclude she would become so within two years. In addition there was the need for her to care for the child, still of tender years (Slimer v. Slimer, Fla.App. 1959, 112 So.2d 581).
At the time of the judgment the wife was 36 years of age. She had attended high school and two years of college, but had no business experience or training or skills which would enable her to be self supporting. She had never been employed, except for having done part time modeling for a short period (twice a week for approximately six months immediately after the marriage, when she was 21 years of age). When the judgment was entered the wife, who is 5' 4" in height and whose normal weight was 90 pounds, weighed between 70 and 75 pounds. Her condition of health was not good, although according to medical evidence presented she was not suffering from any ailments from which recovery could not be expected. The husband's financial ability to pay the alimony was established. The court found he had assets of $100,000.00, and an annual salary income of $35,000.
On the facts shown, permanent rather than rehabilitative alimony should have been granted. See Schwarb v. Schwarb, Fla.App. 1972, 259 So.2d 745; Wilson v. Wilson, Fla.App. 1973, 279 So.2d 893; Osman v. Osman, Fla.App. 1973, 280 So.2d 67; Dash v. Dash, Fla.App. 1973, 284 So.2d 407; and the following decisions applicable to this case, which were not available to the trial court because they were decided after the date of the judgment: Reback v. Reback, Fla.App. 1974, 296 So.2d 541; Schwartz v. Schwartz, Fla.App. 1974, 297 So.2d 117; Kalmutz v. Kalmutz, Fla.App. 1974, 299 So.2d 30.
In Reback v. Reback, supra, speaking through Judge Pearson this court said:
"The dictionary definition of the word `rehabilitate' is to `restore to a former capacity .. . to put on a proper basis or into a previous good state again'. This word, when applied descriptively to alimony to which a husband or wife may be entitled, assumes necessarily either a previous potential or actual capacity for self-support in the person seeking alimony which has been undeveloped or completely lost during the marriage. The ordinary definition indicates that `rehabilitative' alimony is appropriate in those situations where it is possible for the person to develop anew or redevelop a capacity for self-support, * * *"
*364 In Schwarb v. Schwarb, supra, in reversing a grant of rehabilitative alimony by monthly payments for one year, the court stated, "We have examined the evidence adduced before the chancellor and find insufficient evidence from which the chancellor could reasonably conclude that the need of the plaintiff wife for the alimony payments * * * would, or were likely to terminate on or about January 15, 1972".
In Wilson v. Wilson, supra, the court said:
"Under the circumstances here reflected where the wife performed household functions for twenty-three years, is ill, and sincerely has no earning ability or promise of same, we feel she should be awarded permanent periodic alimony commensurate with her needs and the husband's ability to pay. Sharpe v. Sharpe, Fla.App. 1972, 267 So.2d 665 and Slimer v. Slimer, Fla.App. 1959, 112 So.2d 581. Nil prospects to the contrary notwithstanding, if she should somehow blossom into a financially productive member of society and other material change occur, the husband can obtain a trial court review of the award and relief. Section 61.14, F.S. 1971, F.S.A."
In Schwartz v. Schwartz, supra, where the facts respecting the status of the wife were almost identical to those shown in the instant case, this court reversed an award of rehabilitative alimony and directed that permanent alimony be awarded. The similarity of the cases in this connection is shown by the following in the opinion in Schwartz, viz:
"When the parties were married in 1957, the appellant was 19 years of age, and she was 36 years old at the time of the judgment. Her schooling was not extensive. She is not equipped by training, experience or otherwise to support herself. Her only employment consisted of approximately two weeks as a receptionist in a doctor's office, sometime prior to her marriage. Therefore, there is nothing to which the wife can be rehabilitated. If, after some period of time, she should acquire or become possessed of the ability to support herself to an extent which should relieve the husband of his obligation in that respect in whole or in part, that would constitute a change of circumstances for which the husband might seek relief from continued payment of alimony."
Accordingly, the judgment in this case is hereby amended to provide that the periodic installment alimony of $100 per week, which is ordered in the judgment to be paid by the husband to the wife, shall be so paid during the lifetime of the wife or until she shall remarry, with the proviso that if the husband should predecease the wife, while the obligations to pay such alimony is in effect, the obligation to pay the same would thereupon terminate.
Proceedings for modification of the judgment, as amended in this regard, would be available to the parties in the future under § 61.14 Fla. Stat., F.S.A. in event of change of circumstances sufficient therefor.
The holding of the trial court with reference to the amount held under the certificate of deposit, which denied the wife's claim to half interest therein is supported by the evidence, and we observe no need for a full discussion thereon.
Regarding the stock brokerage account, in the judgment it was stated: "The Court is satisfied from the testimony that the respondent [husband] at no time intended a gift of the securities in the account at Merrill, Lynch, Pierce, Fenner and Smith Inc., and that any presumption of gift has been overcome by clear and convincing testimony to the satisfaction of the court".
In reversing the holding of a trial court predicated on such a finding, we are not unmindful of the respect and force which an appellate court should attribute thereto, but we recognize also the duty of an appellate court to reverse where a decision *365 is based on a finding that is plainly wrong or without support in the evidence, or where the conclusion of the trial court based on the evidence represents a misapplication of the law governing the facts disclosed.
Prior to the time of the 1959 marriage, the husband had established and owned the brokerage account. Also he held a substantial interest in a corporate business. The latter became in financial trouble, with bankruptcy imminent. The husband had become personally liable on certain obligations of the corporation. In on attempt to make his interest or equity in the brokerage account immune to process, in event his personal obligations incident to the corporation should be enforced, the husband changed the account to one owned jointly by him and his wife. The feared bankruptcy of the corporation was avoided and its financial indisposition was cured. Approximately five years later, in June of 1970, a favorable sale of the corporate business was made through a merger, with the husband acquiring a substantial amount of stock of the parent corporation and employment thereby at a salary of $35,000 per year.
Here the evidence upon which the court concluded the husband clearly had shown absence of intent to confer upon the wife an interest in the brokerage account was his self-serving after the fact (at trial) statement that he had created the joint account for a business purpose and had not intended the wife should have an interest therein, plus the fact that the wife had taken no active part in the handling of the account or traded therein during the approximate ten-year period in which she had been a record joint owner.[1]
The latter circumstance was unsubstantial, because normally it would be the experienced businessman husband who would do the trading in such a jointly owned brokerage account, and for a wife, not having business experience, to trade in the account would be exceptional.
To accomplish his business purpose the husband took the steps necessary to make the wife a joint owner of the brokerage account. Having intentionally done so, and thereby gained for himself the legal effect thereof, the husband may not be heard to say he did not also intend that the legal effect of the transaction would inure to the joint owner wife, who was innocent in the transaction, and not involved in or concerned with the husband's business problem which motivated him to make the brokerage account a joint one. The intent of the husband in taking such action cannot be thus divisable. This court so held in a substantially similar situation in Holton v. Holton, Fla.App. 1966, 189 So.2d 214.[2]
*366 Moreover, in this case, as in Holton v. Holton, supra, the husband did not seek to disclaim such an interest in the wife for a period of approximately ten years (during most of which period the motivating business reason no longer existed), and then only on occasion of a divorce, or as in this case when separation had occurred and a dissolution of the marriage was imminent.
When the husband caused the brokerage account to become jointly owned by him and his wife, there arose a presumption that her joint interest in the securities in the account was a gift. As to those securities which were purchased or acquired through subsequent trading of the husband in the joint brokerage account, the parties became the owners thereof as tenants by the entirety. The legal effect of the foregoing, as conferring an ownership interest in the wife of the securities in the account could be avoided by the husband only by showing by the required quantum of proof that no such gift interest therein for the wife was intended. Lauderdale v. Lauderdale, Fla.App. 1957, 96 So.2d 663; Witlin v. Witlin, Fla.App. 1963, 153 So.2d 70; Calligarich v. Calligarich, Fla.App. 1971, 256 So.2d 60. In the circumstances of this case, the evidence relied upon to negate such intent on the part of the husband was insufficient. Holton v. Holton, supra. We are impelled to conclude that the contrary holding of the trial court on the facts and circumstances disclosed in the evidence represented a misapplication of the law.
Accordingly, with reference to the asset listed in the judgment consisting of the brokerage account with Merrill, Lynch, Pierce, Fenner and Smith, the holding of the court that the same is wholly owned by the husband, and denying the claim of the wife to a one-half interest therein, is reversed. Upon remand of the cause the trial court may determine the amount or value of the wife's one-half interest therein, including accountability to her by the husband for her share of any securities or sums which the husband may have received or withdrawn from the brokerage account subsequent to the commencement of this action.
The judgment is affirmed in part and reversed in part, as and in the respects hereinabove set forth.
NOTES
[1] "But in order to continue the corporation going, we were in such a non liquid position that I had to do certain personal guarantees along with my father with some of the big creditors and under those circumstances, I was advised that if I had funds, if they were in joint names, that they couldn't be attached in a bankruptcy and, therefore, I put the funds into a joint name." (By the husband, in testimony.)

"... the Respondent testified at length that the only reason he placed the property in joint name was to protect it from the possibility of being lost to creditors. That his business was in very bad financial condition and he had personally guaranteed notes and had been advised by his attorneys that by placing property in joint name it would be free from any of his judgment creditors." (By the court, in the judgment.)
[2] In Holton, when a loan was sought by a husband the lender required that certain property owned by the husband which was to be security for the loan should be made an estate by the entirety in order that the note and mortgage would be made by the husband and the wife. The husband complied. Thereafter in the divorce action the husband contended that in so doing he had not intended that the wife should have the benefit of the legal effect of the transfer to an estate by the entirety. In reversing a trial court finding that the absence of such intent on the part of the husband was shown by clear, positive and convincing evidence this court, in an opinion authored by Judge Pearson, said (189 So.2d at 216):

"* * * It is clear that the husband intended the result  an estate by the entirety. However, he may not have intended the full legal effect of the estate; that is, that his wife should have an ownership interest in the real estate.
"The question becomes: Can one avoid the legal effect of the estate when he intended the creation of the estate for some purposes (the legal effect of the note and mortgage) but not for others (the legal effect between himself and his wife)? The husband urges that he intended for the estate to be binding as to strangers but not between himself and his wife. This divisible intent, whereby one does not intend one of the legal effects of his fully understood act but does intend all others, is not a lack of intent as used in the cases which require a clear showing of an intent not to make a gift."
* * * * * *
"The chancellor misapprehended the legal effect of the evidence when he found that the intent not to create an estate by the entirety was clear, positive and conclusive."