Edward CONRAD, Administrator of the Estate of Fred J. Bowers, Respondent,

v.

Essie BOWERS, Appellant.

No. 36422.

Missouri Court of Appeals, St. Louis District, Division Three.

Dec. 16, 1975.

Charles W. Medley, Farmington, Robert A. Dempster, Sikeston, for appellant.

Roberts & Roberts, Geoffrey L. Pratte, Farmington, for respondent.

SIMEONE, Presiding Judge.

This cause involves the construction of the recently enacted dissolution of marriage law adopted by the general assembly, §§ 452.300–452.415, RSMo Supp.1973, and specifically involves the interpretation of the term "marital property" as used in that act. While the facts are rather simple, the legal issues are complex and are not easily resolved.

This is an appeal by the appellant, Mrs. Essie Bowers, from a decree entered by the circuit court of Madison County on May 20, 1974, which dissolved the marriage between her and Mr. Fred Bowers and which divided certain real and personal property between the parties.[1] The parties did not contest the decree insofar as it relates to the dissolution; all agree that there was no reasonable likelihood that the marriage could be preserved and that the marriage was irretrievably broken, but the appellant-wife contends that the trial court erred in awarding all of the real estate to the husband, Fred, because the court's finding "constituted an abuse of judicial discretion and was against the weight of the creditable [sic] evidence." For reasons hereinafter stated, we affirm the result reached by the trial court.

---

1. Subsequent to the trial, Mr. Bowers died and the administrator of his estate, Edward Conrad, was substituted as a party.

A detailed review of the evidence is not necessary for the resolution of the issue presented—whether the court erred in awarding all of the real estate to the husband. The appellant, Mrs. Bowers, does not contest that portion of the decree awarding custody of the minor child, Fred, Jr., to the husband, but she does vigorously contend that the court erred in (1) awarding all the real estate to the husband because the court allegedly held that the real property acquired after the marriage had been acquired with funds derived from the sale of property which the husband owned prior to the marriage, and (2) not taking into consideration the various relevant factors listed in § 452.330, subsection 1. In oral argument before this court, appellant also contended that, in dividing the marital property, the trial court may consider only such "conduct" of the parties during the marriage as relates to financial matters and it may not consider socially unapproved conduct, unrelated to financial matters.

On November 23, 1973, Fred J. Bowers filed his petition for "divorce" under the law then in existence. He sought a "divorce" and custody of the parties' one child, Fred, Junior. On May 15, 1974, Mr. Bowers amended his petition alleging that the marriage was "irretrievably broken." On December 20, 1973, Mrs. Bowers filed her cross-bill also seeking a "divorce," custody of the child, Fred, Jr., and division of the property. The cause was tried under the new dissolution of marriage act.

Mr. and Mrs. Bowers were married in April, 1967, after a "courtship" of six years. At that time and prior to his marriage, Mr. Bowers worked in Chicago and its environs. Prior to his marriage, he owned, in his own name, a certain piece of real estate in Lombard, Illinois—hereinafter referred to as the Lombard property. This property was valued at approximately $35,000 by Mr. Bowers, and $45,000.00 by Mrs. Bowers. At the time of the trial court hearing, there was a mortgage on the Lombard property of approximately $7,000, leaving an equity of $28,000. The Lombard property was never sold, and was still in the name of Fred Bowers at the time of the dissolution hearing. Mr. and Mrs. Bowers, at the time of their marriage, moved into the Lombard property with Mrs. Bowers' five children of a previous relationship. Mr. Bowers, while living in Illinois, also owned two "flats" or apartments which apparently were owned by Mr. Bowers and his former wife who died before he married his present wife, Essie. These two flats were sold after the marriage, and there was realized a profit of $16,500.00. With the proceeds of the sale of these two "flats," Mr. and Mrs. Bowers purchased certain real property in Elmhurst, DuPage County, Illinois—hereinafter referred to as the Elmhurst property. This property was purchased in the names of both Mr. and Mrs. Bowers. The Elmhurst property was valued at approximately $10,000 by Mr. Bowers, and $15,000 by Mrs. Bowers. There was also a mortgage on this property of approximately $3,000, leaving an equity of some $7,000.00. Subsequently, the parties came to Fredericktown, Missouri and purchased a home, the title to which was also placed in their joint names. The Fredericktown property was purchased with proceeds from a loan on the Elmhurst property and from a loan of $10,000.00 from Evelyn Davis, Mrs. Bowers' sister. There was also a mortgage on the property of $3,000.00, leaving an equity in the Fredericktown property of $4,500.00

For a clearer picture of these transactions, we tabulate the following:

| | Property | Value | Mortgage | Equity | Title |
|---|---|---|---|---|---|
| 1. | Lombard | $35,000–45,000 | $7,000 | $28,000–38,000 | Husband |
| 2. | Elmhurst | $10,000–15,000 | $3,000 | $7,000–12,000 | Husband + Wife |
| 3. | Fredericktown | $17,500 | $3,000 + $10,000 loan | $4,500 | Husband + Wife |

During the marriage, Mr. Bowers purchased several items of personal property, including a 1971 Mercury Marquis, an organ for $2900 and some other personal property.

The parties during the marriage had innumerable difficulties. For some periods of time prior to November, 1973, Mrs. Bowers' four other children by a prior marriage were living in the Fredericktown home. Ethel, Essie's sister, and her husband, Billie Bob Todd, and their children, and Evelyn, also Essie's sister, were living with the Bowers at the Fredericktown house and had been there for some two weeks. One week, Ethel took ill and was taken to the hospital. Some time later she returned. A day after Ethel returned from the hospital to the Bowers' home, Mrs. Bowers and Billie, Ethel's husband, left the Bowers' home at the same time with two of the children.

When Mrs. Bowers and Billie Bob, Ethel's husband, left the Bowers' home on November 2, 1973, they left in their respective automobiles. Mrs. Agnes McCollum, a witness for Mr. Bowers, testified that she owned a certain mobile court in Sikeston, Missouri. She testified that Mrs. Bowers came to her mobile apartments in November and told her "they"—Mrs. Bowers, Mr. Todd and two children—wanted to rent an apartment. They lived there a week. Ethel, also a witness for Mr. Bowers, testified that she found her husband and Mrs. Bowers at that apartment—that she went there and asked "the lady if Essie and Bob Todd rented that apartment. She said, 'Yes.'" This was denied by Mrs. Bowers and other witnesses, who insisted that she worked and lived in New Madrid in a motel for room and board. In any event, there was evidence that when Mrs. Bowers left the home she took the Mercury and sometime later removed a 24″ color TV set, a 24″ Olympic TV, a Grundig stereo, the Wurlitzer organ, boxes of clothing, an electric steam ironer, some furniture, two air conditioners and various other items. She did not remove a 1966 station wagon or some household items such as the stove and washer. She did remove some bedroom sets but left others. When she left the Bowers' home she also had in her possession certain credit cards of Mr. Bowers'—Bank Americard, Shell, Standard Oil and Penneys. During the period after she left the Fredericktown home, she charged certain items of clothing, merchandise and gasoline amounting to a total of $2,388.17, on these credit cards.

At the time of the dissolution hearing, Mr. Bowers was retired and was 66 years old. He had a monthly income of $233.00 from social security for himself and $49.70 for Fred, Junior. He was also receiving some rent now and then from two other properties. Mrs. Bowers had an eighth grade education and was thirty-eight years of age at the time of the hearing.

Mr. and Mrs. Bowers lived together from 1967 until November, 1973. Mrs. Bowers' version of leaving in November was that she had "enough" and "I was going to leave whether he [Billie Bob Todd] went or not," because she was "tired of working and cooking and washing clothes and looking after everybody."

On May 20, 1974, after the hearing, the trial court entered its judgment. The court, after making certain findings, found that Mr. Bowers,

" . . . prior to the marriage of the parties, was the owner of real estate and property, including the Lombard property . . . and certain apartment buildings of a greater value than the property now owned, and that the acquisition of

the property hereinafter referred to as the Elmhurst property, [and the property?] in Fredericktown, and the equity therein were [sic] acquired with the proceeds of the property previously owned by the petitioner [Mr. Bowers] . . . and that in equity the petitioner should be sole and exclusive owner of all such real estate and the respondent [Mrs. Bowers] should have no interest therein. The Court further finds that all of said property is marital property . . . ." [sic]

The court ordered that (1) the marriage be dissolved, (2) Mr. Bowers have custody of the son, subject to visitation rights, (3) all the real estate be awarded to Mr. Bowers, and Mrs. Bowers execute the proper deeds, (4) Mrs. Bowers retain the personal property in her possession,[2] and Mr. Bowers retain the personal property in his possession, including the 1966 station wagon; (5) Mrs. Bowers' attorney be paid by Mr. Bowers, and (6) Mr. Bowers be held responsible for "all" indebtedness owed by the parties.[3]

Mrs. Bowers appealed, urging this court to reach our own results and enter an appropriate judgment because of the "great discrepency" in the division of marital property.

■ Our review on this dissolution of marriage case is the same as it was in a divorce case. It is our duty to review the case de novo upon both the law and the evidence and to reach our own independent conclusions, based on the law and the evidence presented. In doing so, however, we give due deference to the trial court's assessment of the credibility of the witnesses, since it has a superior opportunity to ob-

serve them, and in case of conflict in the evidence we apply the rule of deference. We will not set aside the judgment unless it is erroneous. *Powers v. Powers,* 527 S.W.2d 949, 954 (Mo.App.1975); *S__ v. S__,* 514 S.W.2d 1, 4 (Mo.App.1974), and cases cited therein; *Oliver v. Oliver,* 325 S.W.2d 33, 38 (Mo.App.1959); *Forrest v. Forrest,* 503 S. W.2d 80, 83 (Mo.App.1973); *D__ M__ S__ v. P__ E__ S__,* 526 S.W.2d 361, 362 (Mo. App.1975); Rule 73.01(3).

The issues presented as we view them are (1) whether the trial court may consider "the conduct of the parties during the marriage" as one of the relevant factors in dividing the marital property; (2) and if so, what constitutes such "conduct" which may be considered; (3) whether the court erred in dividing the "marital property" shown in the evidence; (4) whether the law of Missouri—that property acquired after marriage and placed in the joint names of husband and wife is presumed to be a provision for the wife—is changed by § 452.330; and (5) whether the trial court ignored the relevant factors listed in § 452.330, subsection 1.

■ We start with the language of the dissolution of marriage act and particularly § 452.330. That section provides that (1) upon dissolution, the court shall set apart to each spouse his property and divide the marital property in such proportions as the court deems just after considering all relevant factors listed in subsection 1, including the "conduct of the parties during the marriage," (2) marital property[4] includes "all property acquired by either spouse subse-

---

**2.** The 1971 Mercury, the color TV set, one black/white TV set, the organ worth approximately $2700.00, the stereo, the furniture, air conditioner, and several appliances.

**3.** We take this to mean that it includes the credit card charges of $2388.17 and the $10,-000.00 that both Mr. and Mrs. Bowers owed Ethel. This judgment does not conflict with our recent decision of *Rodden v. Rodden,* 527 S.W.2d 41 (Mo.App.1975). That case involved a judgment to pay all extraordinary medical expenses. Such expenses were

not definite. Here the expenses can be identified and can be made certain. *Id certum est quod certum reddi potest.*

**4.** The word "property" is not defined but it is comprehensive. See discussion of the definition of marital property in *Claunch v. Claunch,* 525 S.W.2d 788, 790 (Mo.App. 1975), and *Nixon v. Nixon,* 525 S.W.2d 835, 839 (Mo.App.1975), where marital property includes a settlement of a personal injury action.

quent to the marriage except:" " . . . [p]roperty acquired in exchange for property acquired prior to the marriage . . ." and (3) all property "acquired by either spouse subsequent to the marriage . . . is presumed to be marital property" regardless of how title is held, but this "presumption . . . is overcome [5] by a showing that the property was acquired" " . . . in exchange for property acquired prior to the marriage . . . ."

Section 452.330 is based on § 307 of the Uniform Marriage and Divorce Act approved by the National Conference of Commissioners on Uniform State Laws in 1970.[6] 9 Uniform Law Ann. 455, 490 (1973). Section 307 provides that all property acquired after marriage is presumed to be marital property, except certain property acquired by gift or exchange, and further provides that the court shall divide the marital property in "just proportions" after considering the relevant prescribed factors. To this extent, § 307 of the Uniform Act is the same as § 452.330. There is at least one substantial difference between § 452.330 and § 307 of the Uniform Act. The Uniform Act requires a division of the marital property "without regard to marital misconduct," whereas § 452.330, subsection 1(4) requires our courts to consider the factor of the "conduct of the parties during the marriage." [7] The Commissioners' Note to the Uniform Act comments that the court is not to consider "marital misconduct, such as adultery or other nonfinancial misdeeds, committed during the marriage, in making its division." 9 U.L.A., supra, § 307 at 492.

In view of our statute, it is clear that the act requires the trial court to consider, as one of the relevant factors in the division of marital property, the "conduct" of the parties during the marriage. This means both good conduct and marital misconduct. It is not limited to conduct relating to financial misdeeds as urged by counsel for appellant. See *Powers v. Powers,* supra, at p. 957.

As to the division of property, under § 452.330, the duties of the trial court are clear.[8] First, the court is to set apart to each spouse "his [or her] property." Secondly, the court "shall divide the marital property in such proportions as the court deems just after considering all relevant factors" including the "conduct of the parties during the marriage." It is not necessary, however, that there be an equal division. *Powers v. Powers,* supra, at p. 957; *Reed v. Reed,* 516 S.W.2d 568, 570–571 (Mo. App.1974); Fowler and Krauskopk, Property Provisions, 29 J. of Mo.Bar, 508, 511–512 (1973).

Based upon the statute and what we believe to be the legislative intent, we are

**5.** The act does not indicate the degree of burden of proof to overcome the "presumption." The common law presumption is that the property taken in the name of the husband and wife is presumed to be a provision for or a settlement on the wife, even though the husband furnished the consideration. *Lehr v. Moll,* 247 S.W.2d 686, 689 (Mo.1952); *Sutorius v. Mayor,* 350 Mo. 1235, 170 S.W.2d 387, 392 (1943). The proof to overcome the presumption must be so clear that no reasonable doubt can be entertained of its truth, and the evidence must be so cogent and compelling as to exclude a reasonable doubt from the chancellor's mind. See *March v. Gerstenschlager,* 436 S.W.2d 6, 8 (Mo.1969).

**6.** The act has been adopted in Arizona, Colorado and Kentucky. Ariz.Rev.Stat., §§ 25–311 to 25–339 (1973); 1971 Perm.Supp., Colo.Rev.Stat., §§ 46–1–1 to 46–1–33; Ky.

Rev.Stat., §§ 403.010, 403.110–403.350 (1972).

**7.** The fact that misconduct could not be considered in the division of marital property influenced the House of Delegates of the American Bar Association in 1972 to defeat the Uniform Act. See discussion in Thayer, Introduction to Divorce Reform, 29 J. of Mo.Bar 496, 498 (1973).

While "fault" is not determinative of whether the marriage should be dissolved, it is relevant to the division of the marital property. In some states this issue is not admissible on the issues of property division. See cases collected in Annot., 55 A.L. R.3d 581, 606–608 (1974).

**8.** The Commissioners' Note defines these duties. 9 U.L.A., supra, at 492.

convinced that the result reached by the trial court is not erroneous and should be affirmed.

First, it was not disputed that the Lombard property was purchased and titled in the name of Mr. Bowers prior to his marriage with the appellant and remained so titled after the marriage. The Lombard property, therefore, is not marital property,[9] and should be set apart to Mr. Bowers. The implication of subsection 2 of § 452.330 is clear that property acquired prior to, rather than subsequent to, the marriage and maintained and treated as such after the marriage is not marital property. That is what Mr. Bowers has done with the Lombard property, and that property is to be considered as his separate property and must be "set apart" to him.[10]

Second, whether the Elmhurst property, purchased with proceeds from the sale of the apartments owned by Mr. Bowers prior to the marriage and placed in the joint names of Mr. and Mrs. Bowers after the marriage, is to be considered marital property is not so easily resolved.

Appellant contends that the trial court "apparently" awarded the real property to Mr. Bowers on the basis that the Elmhurst property had been acquired with funds derived from the sale of property which the husband owned prior to the marriage. But, appellant argues, it has long been the law of Missouri that "when real estate is taken in the name of the husband and wife, even though the husband furnished the consideration, it is presumed that the husband intended the conveyance as a provision for his

wife and no trust results in favor of the husband." Appellant relies on *Sutorius v. Mayor,* supra, and *Lehr v. Moll,* supra. See also *Keefe v. Keefe,* 435 S.W.2d 313, 314–315 (Mo.1968).

As stated, subsection 3 of § 452.330 provides that all property acquired by either spouse subsequent to the marriage is presumed to be marital property, but this presumption may be overcome by a "showing that the property was acquired by a method listed in subsection 2." One of the methods of overcoming the presumption is to show that the property is acquired "in exchange[11] for property acquired prior to the marriage . . . ." If the presumption may be overcome by merely showing that the property was acquired in exchange for property acquired prior to the marriage, this would then conflict with the well-settled Missouri common law rule established by judicial decisions that when title to real estate is taken in the name of husband and wife, even though the husband furnishes the consideration, it is presumed that the husband intended the conveyance as a provision for or a settlement upon his wife and no trust results in favor of the husband.

Hence, the issue to be resolved is whether the presumption that property acquired subsequent to the marriage in joint names is marital property is "overcome" by showing only that the after-acquired property was acquired "in exchange for property acquired prior to the marriage" or whether there must also be clear and convincing evidence that the property acquired subse-

---

9. Although the trial court found in its judgment that all the property including the Lombard property was marital property, this cannot be true under the statute.

10. See *Gaskie v. Gaskie,* 534 P.2d 629, 632 (Colo. banc 1975)—where wife's separate property did not lose its identity, property should not be included in the marital estate; *Belcher v. Belcher,* 307 So.2d 918, 920 (Fla. App.1975)—award to wife of furnishings which were property of husband prior to marriage was improper absent evidence of any gift or conveyance of same to wife.

The Missouri act does not prohibit one spouse during the marriage from making a contribution to or a gift of any property, including his or her separate property acquired prior to the marriage, to the other spouse.

11. We do not construe this term as an exchange in kind but includes the situation where the property acquired prior to the marriage is sold and the proceeds are used to purchase another parcel of property. See *In Re Marriage of Armbeck,* 33 Colo.App. 260, 518 P.2d 300, 301 (1974).

quent to the marriage and held in "some form of coownership" was not intended as a settlement upon or a gift to the other spouse.

At first blush, it would seem that, under subsection 3 of § 452.330, the presumption that all property acquired subsequent to the marriage is overcome by merely showing that such property was acquired in exchange for property acquired prior to the marriage and nothing more. This would mean that a spouse owning property prior to the marriage could exchange that property, place such exchanged property in joint names and after many years of a happy marriage, defeat the right of the other spouse in such property with the result that the other spouse would have no interest whatsoever in the property held in joint names. This effect would follow: A husband who owned property prior to his marriage in his name could, upon exchanging that property after marriage and placing the title to the exchanged property in the joint names of himself and his wife, defeat any right of the wife to the jointly held property after many years of a loving marriage, child rearing and compatibility. We believe the general assembly could not have, by the dissolution act, intended such a result. We do not believe that the general assembly intended to overrule the well-settled common law presumption established by innumerable judicial decisions that if a spouse after marriage purchases property in joint names, even though one furnishes the

consideration, it will be presumed, in the absence of clear and convincing evidence rebutting such presumption, that such a conveyance was intended as a provision for, or a settlement in favor of, or as a contribution to or gift to the marital estate.[12] We believe, rather, that the general assembly intended that all property acquired subsequent to the marriage taken in joint names of husband and wife is marital property subject to division upon dissolution, unless (1) it is shown that the property acquired subsequent to the marriage was acquired in exchange for property acquired prior to the marriage *and* (2) it is shown by clear and convincing evidence that the transfer was not intended as a provision for a settlement upon or as a gift to the other spouse. If the only requirement to overcome the presumption that property acquired subsequent to the marriage was to show that the property was acquired in exchange for property acquired prior to the marriage many untoward and inequitable results would certainly follow.[13]

Statutes are to be construed "to effect the modification and synchronization of statute law with common-law rules and maxims." 2A Sutherland, Statutory Construction, § 50.02, p. 274 (4th ed. 1973). The law does not favor repeal by implication; in construing a statute all statutes applicable to a subject should be construed together and, if possible, harmonized so as to preserve the integrity of both. *In re McArthurs Estate*, 240 Mo.App. 435, 207 S.W.2d

---

**12.** The common law of Missouri and the judicial construction of § 452.330 has always been that if a spouse pays the consideration and has a conveyance made in joint names, it will be presumed that it was intended as a settlement upon, or a provision for or a gift to the other spouse. *Gillespie v. Gillespie*, 289 S.W. 579, 581 (Mo.1926); *Lewis v. Lewis*, 354 Mo. 415, 189 S.W.2d 557, 560 (1945); *Gaede v. Smith*, 354 Mo. 738, 190 S.W.2d 931, 932 (1945); *Keefe v. Keefe*, supra; *Sutorius v. Mayor*, supra; *Lehr v. Moll*, supra.

This is also the general rule throughout the United States. Bogert, Law of Trusts, § 74, pp. 271–272 (5th ed. 1973); Restatement, Trusts, § 442 (2d ed. 1959).

**13.** "No interests secured by law are of more fundamental importance to individuals and to society than interests of the family and in domestic relations. . . . Because of the *central and historic role of the family in society*, legislation affecting domestic matters and relationships always has to be engrafted into an established system of law, partly decisional and partly statutory. The twin principles of interpretation with reference to the common law and with reference to related statutes, are therefore always pertinent and important in construing statutes on the subject of domestic relations." 3 Sutherland, Statutory Construction, supra, § 68.01, at 239.

546, 550 (1948); *Gross v. Merchants-Produce Bank*, 390 S.W.2d 591, 598 (Mo.App. 1965).

Since the Elmhurst property was purchased in the joint names of Mr. and Mrs. Bowers, we hold that it is presumed that the property became marital property. While there was evidence to show that it was acquired in exchange for property acquired prior to the marriage, we find no evidence in the record to rebut the presumption so as to indicate that this property was not intended as a provision for, or a settlement in favor of, or a gift to Mrs. Bowers. We find no evidence that any estate was intended other than a "joint tenancy" (the property being located in Illinois). Hence, we must conclude that the Elmhurst property acquired subsequent to the marriage and prior to the decree of dissolution is marital property within the meaning of § 452.330.

The result we reach here is, we believe, consistent with decisions in other jurisdictions which have adopted the Uniform Laws. In Colorado, it has been held that ". . . when one spouse [having purchased a residence in joint names with his funds acquired prior to the marriage] causes title to be placed jointly with the other spouse a gift is presumed and the burden to show otherwise is upon the donor." *In re Marriage of Moncrief*, 535 P.2d 1137, 1138 (Colo.App.1975); *In re Marriage of Altman*, 530 P.2d 1012 (Colo.App.1974). See also concurring opinion in *Batesole v. Batesole*, 24 Ariz.App. 83, 535 P.2d 1314, 1317 (1975); Cf. *In re Marriage of Killgore*, 532 P.2d 386, 388 (Colo.App.1974); Annot., 43 A.L.R.2d 917 (1955); *Goldstein v. Goldstein*, 310 So.2d 361, 366 (Fla.App.1975).

Third, the Fredericktown property purchased as a home for the parties in both names is clearly marital property, since it falls within none of the exceptions enumerated in § 452.330. *Nixon v. Nixon*, supra.

Therefore, (1) the Lombard property is separate property of Mr. Bowers and must be "set apart" as his property, (2) the Elmhurst property is marital property and must be considered so in the division on dissolution and (3) the Fredericktown property acquired subsequent to the marriage is clearly marital property.

But, although we consider the Lombard property as separate property and the Elmhurst and Fredericktown properties as marital property, we nevertheless are convinced that there was no abuse of discretion by the trial court in reaching the result it did in awarding all the real estate to Mr. Bowers and in dividing the other property in the manner and amounts provided for in the judgment.

The trial court did not abuse its discretion in awarding Mr. Bowers the marital property—Elmhurst and Fredericktown. The equity in the Elmhurst and Fredericktown properties was approximately $11,500.00. Since Mrs. Bowers was awarded various items of personal property,[14] including the 1971 Mercury, the organ worth approximately $2,700.00, the stereo, TVs and furniture, and was, as between the parties, relieved of all debts including the $10,000 loan from Evelyn, all mortgages and all charges on the credit cards charged by Mrs. Bowers amounting to almost $2,400.00, we cannot say that the trial court abused its discretion in awarding the real estate to Mr. Bowers or that the trial court's judgment was against the weight of the evidence. The judgment specifically provided that Mr. Bowers was to be responsible for "all indebtedness." The division of property between the husband and wife upon dissolution is a subject peculiarly within the discretion of the trial court, and its decision will not be overturned except for an abuse of discretion. *Beals v. Beals*, 516 P.2d 650, 651 (Colo.App. 1973).

14. Color TV, $100; TV, $75; Mercury; organ, $2,700; stereo; credit card charges, $2,400; furniture; relief from loan amounting to approximately over $10,475.

The appellant also contends that the trial court ignored the "guidelines" or relevant factors in making the division except for the contribution factor noted in the statute. We do not agree. The trial court in its order specifically indicated that in reaching its conclusion it considered the "contribution of each spouse," the "economic circumstances of each spouse," the "value of the property set aside," and "the conduct of the parties during the marriage." There was substantial evidence on each of these factors. Mr. Bowers was sixty-six years of age, Mrs. Bowers, thirty-eight. Mr. Bowers lived on social security. Mr. Bowers was given custody of the minor son.[15] While denied by Mrs. Bowers that there was any misconduct with Mr. Todd, there was some substantial evidence of such misconduct.

■ We therefore conclude that the trial court did consider the relevant factors in making the division of the marital property.

■ In summary, we conclude that (1) for purposes of the division of marital property under § 452.330, the "conduct" of the parties during the marriage is a relevant factor to be considered by the trial court, (2) all property of one of the spouses acquired prior to the marriage which remains titled in such spouse after the marriage is, in the absence of some clear intention to contribute that property to the marital property of the parties or to the other spouse, the separate property of that spouse and is not to be regarded as marital property but on dissolution is to be "set apart to each spouse" as his or her property; (3) all property acquired by either spouse subsequent to the marriage and prior to a decree of separation and placed in the joint names of husband and wife is presumed to be marital property unless the presumption is overcome by showing (a) that the property was acquired in exchange for property acquired prior to the marriage and (b) it is shown by clear and convincing evidence that it was not intended as a provision for, or a settlement in favor of, or a gift to the other spouse.[16]

After a careful examination of the entire transcript, the exhibits, the briefs and oral argument, we are convinced that the order of the circuit court dividing the marital property was just[17] in the light of the four relevant factors listed in § 452.330. Although we find that the Lombard property must be considered as the separate property of Mr. Bowers, we reach the same result arrived at by the trial court and affirm the order as reasonable under all the circumstances.

The judgment is affirmed.

McMILLIAN, J., concurs in result only.

GUNN, J., concurs.

McMILLIAN, Judge.

I concur in the result reached only.

I agree with the majority that the trial court erred in holding that all of the property was marital property. Also, I am in accord with the fact that the Lombard property was non-marital property and

---

15. § 452.330 specifically provides that the court consider the "economic circumstances of each spouse . . . including the desirability of awarding the family home . . . to the spouse [Mr. Bowers] having custody of any children . . . ." Subsection 1(3).

16. Under § 452.330, property acquired subsequent to the marriage is presumed to be marital property regardless of whether title is held individually or in some form of coownership. We take this to mean that property acquired subsequent to the marriage in the individual name of one spouse or in the name of one spouse and another, other than the other spouse, is presumed to

be marital property unless the presumption is overcome by showing that the property was acquired in exchange for property acquired prior to the marriage and there is an absence of evidence that such property was intended as a contribution to, or a gift to the other spouse. Such property would, if the presumption is overcome, remain the separate property of the spouse and upon dissolution be set apart to such spouse.

17. See also *Davis v. Davis*, 534 P.2d 809 (Colo.App.1975); *Fery v. Fery*, 532 P.2d 1131 (Ore.App.1975).

should be set apart to Mr. Bowers. I do not agree, however, that the Elmhurst property, purchased with the proceeds derived from non-marital properties owned by Mr. Bowers prior to the marriage is marital property. True, the Elmhurst property was subsequent to the marriage and placed in the names of both spouses as joint tenants, but this only created a presumption that such property was marital property, § 452.-330, subsection 3; but subsection 3 also provides that the presumption is overcome if it is shown that the property was acquired by a method listed in § 452.330, subsection 2(2). Section 452.330(2) declares all property to be marital property if acquired by either spouse subsequent to the marriage except if acquired in exchange for property owned prior to the marriage, § 452.330, subsection 2(2).

If we accept the majority's analysis, not only do we judicially legislate and substitute our judgment for that of the Legislature, but also we disregard the clear intendment of an unambiguous statute. While we may question the wisdom of the Legislature of enacting this particular statute, yet we should not resort to the guise of construing or interpreting a statute so as to distort the plain import of a legislative enactment. Neither should we assume that the Legislature was ignorant or unaware of prior judicial decisions pertaining to presumptions of gifts. Nor should we assume that the Legislature was ignorant or unaware of other legislative enactments pertaining to the same subject matter. Here we are interpreting a special statute that deals with the dissolution of marriage, disposition of property, separation, child custody and support, which is a code within itself and should not be set aside by either judicial decisions, construing the common law, or other statutory enactments contained in other chapters.

While I recognize that the law does not favor repeal by implication; however, that maxim is inappropriate in the instant case because § 452.330, subsection 2(2) and subsection 3 are clear and unambiguous. Accordingly, I would set apart the Elmhurst property as Mr. Bowers' sole property.