In re the MARRIAGE OF Phyllis Field SALISBURY and Henry H. Salisbury.

Phyllis Field SALISBURY, Appellant,

v.

Henry H. SALISBURY, Respondent.

No. WD 32916.

Missouri Court of Appeals, Western District.

June 23, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 3, 1982.

Donald W. Giffin, Curtis E. Woods, Kansas City, for appellant.

Robert M. Sommers, Neal E. Millert, James, Millert, Houdek, Tyrl & Sommers, Kansas City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

On the petition of Phyllis Salisbury the court dissolved her marriage with Henry H. Salisbury and divided the property. The only questions presented on this appeal relate to the finding that a farm was the separate property of Henry, the status of the family home as marital property, and the division of property. Affirmed as modified.

Phyllis and Henry had been married just over twenty years when they separated in September, 1976. Phyllis had been married previously, but her husband had been killed in an auto accident.

■ The first question to be determined is the status of the family home, that is, whether it was marital property or the separate property of Phyllis. Phyllis owned a home when she and Henry were married, and they lived there for a while. Thereaft-

er, they purchased another home. Title to the new home was taken in joint names. Shortly after the home was purchased, the home belonging to Phyllis at the time of the marriage was sold. There is no dispute that Phyllis paid the down payment on the new home, and thereafter made the payments on the mortgage. There is also no dispute that Henry paid a small amount in city taxes at one time and did considerable work in overseeing and assisting in the making of repairs and performing maintenance. There was no evidence that the parties ever considered the home to be the separate property of Phyllis. Phyllis contends that the home should have been set apart to her as her separate property rather than being declared marital property because the home was actually acquired in exchange for the home which she owned prior to the marriage. In *Conrad v. Bowers,* 533 S.W.2d 614, 622[12, 13] (Mo.App. 1975) it was held that it is not sufficient to simply find that property acquired after marriage was acquired in exchange for property acquired prior to the marriage. In addition, the court held it must be shown by clear and convincing evidence that the transfer was not intended as a gift to the other spouse. Here, there is no evidence to overcome the statutory presumption that the house was to become marital property, nor to show that it was intended as a gift to Henry. *Conrad* at 623[16]. The parties lived in this house together for over fourteen years, and the only evidence indicates that they considered this as jointly owned property, although Phyllis contributed practically all of the purchase price. Henry did contribute time and effort to the maintenance and repair of the house. The court correctly held that the house constituted marital property. *Hebron v. Hebron,* 566 S.W.2d 829, 832[2–4] (Mo.App.1978).

The next question concerns a farm containing 640 acres, located in Kansas. This farm was owned by the parents of Phyllis' first husband, the Mussers. Although Phyllis did not have any children by her first marriage, she remained very close to her former in-laws, and when she and Henry

had two children, the Mussers treated the children as their own grandchildren. There is basically no dispute in the facts concerning the acquisition of the farm. The Mussers desired the farm to stay in the family, and although Phyllis was not a blood relative, the Mussers treated her as such, and thus considered that if Phyllis owned the property it would, in fact, remain in the family as a memorial to their deceased son. The Mussers did not particularly like Henry, but did get along with him. The Mussers agreed to sell the farm to Phyllis and Henry for $80,000. Henry paid the down payment of $10,000, and title was taken in the joint names of Henry and Phyllis. The balance was secured by a note and first mortgage in the amount of $70,000. The interest on this note was paid until the death of Earl Musser, at which time the estate demanded payment of the balance due on the note. To raise the necessary funds to pay the $70,000 balance, and to acquire capital for irrigating the land, Henry and Phyllis signed a note and mortgage in the amount of $140,000.

At about the time the balance due on the note was paid and the new mortgage signed, Phyllis decided that the title to this farm should be vested in Henry for federal estate tax purposes. She felt that because she had greater assets than Henry, it would be desirable to get some assets in Henry's name alone so as to reduce the value of their joint estate. Henry and Phyllis executed a deed by which the title to the farm was conveyed to Henry. The deed was subject to the mortgage given to Earl Musser and stated that the intent was to convey all of the right, title and interest of Henry and Phyllis to Henry individually.

Henry signed the following statement, which refers to the farm:

"I, Henry H. Salisbury, hereby state that I shall borrow no money against Section 1, Township 24 South of Range 10W of the 6th PM also described as Lots 1, 2, 3, 4, and the South Half of Section 1 in the Township 24 South of Range 30 West of the 6th PM of Gray County, Kansas for purposes other than that of the protection or improvement of such land without the written consent of my wife, Phyllis F. Salisbury, if living, or if not living, the written consent of my two daughters, Anne F. Salisbury and Ellen F. Salisbury or the survivor of the two. Neither shall I sell such designated property other than under the aforementioned conditions.

"In case of death, I hereby state that the above property shall be left to my daughters, Anne F. Salisbury and Ellen F. Salisbury if they are living at the time of my death. If one or both do not survive me, her (or their) share(s) shall be left to the surviving sister, and if she does not survive, to her issue. If neither daughter nor issue survive, it shall be left to my wife, Phyllis F. Salisbury.

/s/ Henry H. Salisbury"

Phyllis testified this statement was signed at the time the deed was signed and there was other evidence that the statement was either signed contemporaneously with the deed or within a very few days thereafter. The statement itself was undated. The court, although stating that it felt that it was giving a windfall to Henry, found that the farm was the separate property of Henry because of the language of the deed.

Phyllis contends that the farm, having become marital property by reason of being acquired during the marriage, cannot be transmuted to the separate property of her spouse. Henry contends that the deed shows beyond any doubt the intent of the parties to vest title in him separately.

The question of whether or not marital property can be transmuted to the separate property of a spouse is answered in *Rogers v. Rogers,* 573 S.W.2d 425, 426[1] (Mo.App. 1978). The court there stated that there must be clear and unequivocal evidence to show that both parties intend that the property be excluded from their marital property, or, as sometimes stated, transmuted from marital property to the separate property of one of the spouses. This court construes clear and unequivocal evidence to be the same as clear and convincing evidence. This standard comports with the long standing rule stated in *Kidd v. Kidd,* 216 S.W.2d 942, 944[3] (Mo.App.1949):

"[I]n order to constitute a valid gift inter vivos from husband to wife, there must be a voluntary, gratuitous, and absolute transfer of the property from the husband to his wife, effective immediately, and fully executed by delivery to and acceptance by her."

The question becomes whether or not the evidence is sufficient to show by clear and convincing evidence that Phyllis and Henry both intended that the farm be excluded from their marital property and be transmuted to the separate property of Henry. A necessary ingredient of this intent would be that both parties intended an absolute transfer of the marital estate to the separate property of Henry.

■ In view of the statement signed by Henry in which he agreed not to borrow any money or sell the farm except under limited conditions without the written consent of Phyllis or of their two daughters if Phyllis were not living, there does not appear to be an intent on the part of both parties that absolute title be vested in Henry separately. The further provision of the statement signed by Henry that he agreed to devise the property to his two daughters, or to Phyllis if they did not survive him, further indicates that the title was not to be vested in Henry unconditionally and absolutely. Rather, the statement indicates that although the legal title was vested in Henry, Henry was not free to deal with the property as his own. One of the incidents of separate property is that a party has the absolute right to improve, lease, sell, devise or encumber such property. *Cain v. Cain,* 536 S.W.2d 866, 872[3] (Mo.App.1976). Henry did not possess those incidents of ownership under the statement signed by him. It is true that the statement is probably unenforceable, but the relevance of the statement to the issue posed is not whether such statement is legally enforceable, but as showing the intent of the parties that sole and absolute title was not being vested in Henry with the result the farm did not become his separate property.

■ Nor is the language of the deed controlling because under the Dissolution Act the court is authorized to look behind the language of the deed. *Forsythe v. Forsythe,* 558 S.W.2d 675, 678[5–9] (Mo.App. 1977).

The evidence is not clear and convincing that both Henry and Phyllis intended the farm to become the separate property of Henry.

■ Phyllis further contends that the court improperly declared shares of stock in Exxon, Kansas Gas & Electric, Niagara Mohawk, Consumer Power and Southern Company to be marital property when they were, in fact, the separate property of Phyllis. Phyllis testified that all of the shares of stock which she owned in her name alone in those companies, were acquired either with funds which came to her by gift or inheritance, or as a result of the sale of separately owned stock, and thus became shares acquired in exchange for separately owned property. Henry does not dispute that a part of these shares were separate property, but contends only that since the shares were purchased after the marriage, they were properly classified as marital property.

The court awarded all of these shares to Phyllis, but Phyllis contends they should have been set apart to her as separate property. Section 452.330.1, RSMo 1978, requires the court to set apart to each spouse their separate property. Section 452.330.2 provides the exceptions under which property acquired during the marriage becomes marital property. The undisputed evidence in this case is that all of these shares of stock come within the exceptions of property acquired in exchange for property owned prior to the marriage or from property acquired by gift, bequest or devise, and were held in the name of Phyllis alone. The evidence is clear and convincing that both parties treated these shares as the separate property of Phyllis. The court should have set these shares off to Phyllis as her separate property.

■ Phyllis further contends that the court erred in awarding promissory notes totaling $76,500 to Henry. She also con-

tends that with the proper classification of the corporate stock discussed above as separate property, the court abused its discretion in its division of the marital property. In its decree the court divided the marital property as found by it and awarded $346,-049 to Phyllis, and $265,788 to Henry. The trial court set apart to Phyllis $1,296,976 in separate property, and $290,219 in separate property to Henry, including the $270,000 total value of the farm in Kansas. "The trial court is vested with considerable discretion in dividing the marital property." *Nilges v. Nilges,* 610 S.W.2d 58, 60[4, 5] (Mo.App.1980). After considering the reclassification of the farm and stock, this court cannot say that the trial court abused its discretion in the division of marital property. The $76,500 in notes given to Henry are of questionable value. Considering the factors in § 452.330.1, this court finds the division after the modifications directed is fair.

The judgment is modified and the trial court is directed to amend its judgment by finding that the farm is marital property. This will reduce the amount of separate property set apart to Henry from $290,219 to $20,219. The total value of the farm was found to be $270,000, with the balance due on the indebtedness to be $134,580. The equity belonging to the parties is divided equally between them. The court is directed to provide in its decree that if Phyllis desires to retain ownership of the farm that Phyllis shall pay Henry $67,710 and assume all responsibility on the existing indebtedness and hold Henry harmless for any liability thereon. The decree shall give Phyllis thirty days in which to make an election of whether or not she desires to purchase the farm. If she does not desire to purchase the farm, then Henry shall have thirty days in which to elect whether or not he wishes to purchase the interest of Phyllis and to assume all responsibility on the indebtedness and hold Phyllis harmless thereon. If Henry does not desire to purchase the farm, then the farm shall be ordered sold and the net proceeds divided equally between the parties.

The court is further directed to amend its decree by setting off to Phyllis, as her separate property, the stock discussed herein, and to amend the value of property going to each party to reflect the amendments directed herein. In all other respects the judgment is affirmed. The costs on this appeal are divided equally between the parties.

All concur.